**IN THE CIRCUIT COURT OF THE SECOND JUDICIAL CIRCUIT
IN AND FOR LEON COUNTY, FLORIDA**

1329 ABRAHAM STREET HOLDINGS
LLC, a Delaware limited liability company,

    Plaintiff,

vs.

CASE NO.  2023 CA 001304

FLORIDA STATE PRIMITIVE BAPTIST
CONVENTION, Inc., a Florida not for profit
corporation; and MIRACLE HILL NURSING
AND REHABILITATION CENTER INC.,
a Florida not for profit corporation; and
JOHN DOE, as unknown part(ies) in possession,

    Defendants.

_____/

## <u>VERIFIED COMPLAINT FOR FORECLOSURE AND OTHER RELIEF</u>

Plaintiff, 1329 ABRAHAM STREET HOLDINGS LLC, a Delaware limited liability company ("<u>Lender</u>" or "<u>Plaintiff</u>"), by and through its undersigned attorneys, hereby sues the Defendant, FLORIDA STATE PRIMITIVE BAPTIST CONVENTION, INC., a Florida non-profit corporation, MIRACLE HILL NURSING AND REHABILITATION CENTER INC., a Florida non-profit corporation, and JOHN DOE, an unknown party or parties in possession (collectively, "<u>Defendants</u>"), and alleges:

## <u>GENERAL ALLEGATIONS</u>

1.    This is an action to enforce a security interest in limited liability company membership interests or units; foreclosure or other equitable relief of the collateral securing the debt obligations, including foreclosure of a mortgage secured by real property in Leon County, Florida; injunctive relief; and for breach of contract resulting in damages that exceed the amount of $600,000 in the unpaid principal loan amount, collection of interest, late charges, and other advances, exclusive of attorney's fees, costs, advances, and other expenses.

2.      Plaintiff, 1329 ABRAHAM STREET HOLDINGS LLC ("Lender" or "Plaintiff"), is a limited liability company organized under Delaware law, conducts business in Leon County, Florida, is the owner and holder of the Note and Mortgage (as defined below), and attendant Loan Documents (as defined herein), secured by certain real and personal, tangible and intangible property situated in Leon County, Florida, more particularly described as follows (collectively, the "Property"):

**PARCEL 1:**

**COMMENCE AT THE SOUTHWEST CORNER OF MICKLER'S SUBDIVISION, A SUBDIVISION AS PER MAP OR PLAT THEREOF RECORDED IN DEED BOOK "HH", PAGE 590 OF THE PUBLIC RECORDS OF LEON COUNTY, FLORIDA, SAID POINT ALSO MARKING THE INTERSECTION OF THE NORTHERLY RIGHT-OF-WAY BOUNDARY OF ALABAMA STREET AND THE EASTERLY RIGHT-OF-WAY BOUNDARY OF ABRAHAM STREET, THENCE RUN NORTH ALONG THE EASTERLY RIGHT-OF -WAY BOUNDARY OF SAID ABRAHAM STREET 113.54 FEET TO AN IRON PIN AND THE POINT OF BEGINNING. THENCE CONTINUE ALONG SAID EASTERN RIGHT-OF –WAY BOUNDARY OF ABRAHAM STREET, NORTH 00°00'00" WEST FOR A DISTANCE OF 409.90 FEET TO AN IRON PIN; THENCE RUN NORTH 89° 52' 04" EAST FOR A DISTANCE OF 339.94 FEET TO AN IRON PIN; THENCE RUN SOUTH 00° 00' 00" WEST FOR A DISTANCE OF 409.89 FEET TO AN IRON PIN; THENCE RUN SOUTH 89° 51' 59" WEST FOR A DISTANCE OF 339.94 FEET TO AN IRON PIN AND THE POINT OF BEGINNING.**

**PARCEL 2:**

**COMMENCE AT THE SOUTHWEST CORNER OF MICKLER'S SUBDIVISION, A SUBDIVISION AS PER MAP OR PLAT THEREOF RECORDED IN DEED BOOK "HH", PAGE 590 OF THE PUBLIC RECORDS OF LEON COUNTY, FLORIDA, SAID POINT ALSO MARKING THE INTERSECTION OF THE NORTHERLY RIGHT-OF-WAY BOUNDARY OF ALABAMA STREET AND THE EASTERLY RIGHT-OF-WAY BOUNDARY OF ABRAHAM STREET, THENCE RUN NORTH 89° 51' 59" EASTFOR A DISTANCE OF 339.94 FEET TO AN IRON PIN, AND THE POINT OF BEGINNING. THENCE RUN NORTH 00° 00' 00" EAST FOR A DISTANCE OF 210.00 FEET TO AN IRON PIN; THENCE RUN NORTH 90° 00' 00" EAST FOR A DISTANCE OF 202.00 FEET TO AN IRON PIN; THENCE RUN SOUTH 00° 00' 00" WEST FOR A DISTANCE OF 209.53 FEET TO AN IRON PIN ON THE NORTHERN RIGHT-OF-WAY BOUNDARY OF SAID ALABAMA STREET; THENCE ALONG THE SAID NORTHERN RIGHT-OF-WAY BOUNDARY OF ALABAMA STREET, RUN SOUTH 89° 52' 00" WEST FOR A DISTANCE OF 202.00 FEET TO AN IRON PIN, AND THE POINT OF BEGINNING.**

**PARCEL 3:**

**COMMENCE AT THE SOUTHWEST CORNER OF MICKLER'S SUBDIVISION, A SUBDIVISION AS PER MAP OR PLAT THEREOF RECORDED IN DEED BOOK "HH", PAGE 590 AT THE PUBLIC RECORDS OF LEON, COUNTY, FLORIDA, SAID POINT ALSO MARKING THE INTERSECTION OF THE NORTHERLY RIGHT-OF-WAY BOUNDARY**

OF ALABAMA STREET AND THE EASTERLY RIGHT-OF-WAY BOUNDARY OF ABRAHAM STREET, THENCE ALONG SAID NORTHERN RIGHT-OF-WAY BOUNDARY OF ALABAMA STREET, RUN NORTH 89° 51' 59" EASTFOR A DISTANCE OF 339.94 FEET TO AN IRON PIN; THENCE NORTH 00° 00" 00" ESAT FOR A DISTNACE OF 210.00 FEET TO AN IRON PIN AND THE POINT OF BEGINNING; THENCE RUN NORTH 00° 00' 00" EAST FOR A DISTANCE OF 313.43 FEET TO AN IRON PIN; THENCE RUN SOUTH 89° 40' 25" EAST FOR A DISTANCE OF 291.38 FEET TO AN IRON PIN; THENCE RUN SOUTH 00° 00' 00" WEST FOR A DISTANCE OF 521.09 FEET TO AN IRON PIN ON THE SAID NORTHERN RIGHT-OF-WAY BOUNDARY OF ALABAMA STREET; RUN SOUTH 89° 51' 59" WEST FOR A DISTANCE OF 89.37 FEET TO AN IRON PIN ON THE SAID NORTHERN RIGHT-OF-WAY BOUNDARY OF ALABAMA STREET; THENCE RUN NORTH 00° 00' 00" EAST FOR A DISTANCE OF 209.53 FEET TO AN IRON PIN; THENCE RUN SOUTH 90° 00' 00" WEST FOR A DISTANCE OF 202.00 FEET TO AN IRON PIN AND THE POINT OF BEGINNING.

PARCEL 4:

BEGINNING AT THE SOUTHWEST CORNER OF MICKLER'S SUBDIVISION, A SUBDIVISION AS PER MAP OR PLAT THEREOF RECORDED IN DEED BOOK "HH", PAGE 590 OF THE PUBLIC RECORDS OF LEON COUNTY, FLORIDA, SAID PONT ALSO MARKING THE INTERSECTION OF THE NORTHERLY RIGHT-OF -WAY BOUNDARY OF ALABAMA STREET AND THE EASTERLY RIGHT-OF -WAY BOUNDARY OF ABRAHAM STREET, THENCE ALONG SAID EASTERN RIGHT-OF-WAY BOUNDARY OF ABRAHAM STREET, RUN NORTH 00°00' 00" EAST FOR A DISTANCE OF 113.54 FEET TO AN IRON PIN; THENCE NORTH 89° 51' 59" EAST FOR A DISTANCE OF 339.94 FEET TO AN IRON PIN; THENCE RUN SOUTH 00° 00' 00" WEST FOR A DISTANCE OF 113.54 FEET TO AN IRON PIN ON THE SAID NORTHERN RIGHT-OF-WAY BOUNDARY OF ALABAMA STREET; THENCE ALONG SAID NORTHERN RIGHT-OF-WAY BOUNDARY OF ALABAMA STREET, RUN SOUTH 89° 51' 59" WEST FOR A DISTANCE OF 339.94 FEET TO AN IRON PIN AND THE PONT OF BEGININNG.

Parcel ID: 2126510000050

a/k/a 1329 Abraham Steet, Tallahassee, Florida 32304

3.     Defendant, MIRACLE HILL NURSING AND REHABILITATION CENTER, INC. f/k/a Miracle Hill Nursing and Convalescent Home, Inc. ("Borrower" or "Defendant") is a Florida not-for-profit corporation with a principal place of business in Tallahassee, Florida, is title owner of the Property located in Leon County, Florida, and is otherwise *sui juris*.

4.     Defendant, FLORIDA STATE PRIMITIVE BAPTIST CONVENTION, INC. ("Guarantor" or "Defendant") is a Florida not-for-profit corporation with a principal place of business in Tallahassee, Florida, who voluntarily consented to jurisdiction within Leon County, Florida, and is otherwise *sui juris*.

5. Defendant, JOHN DOE ("Defendant" or "Doe"), is a resident of Leon County, Florida, who may claim and interest in the Property by being in possession of the Property.

6. Venue is proper in Leon County, Florida because the Note (as defined herein) was executed in Leon County, Florida and contains a venue provision requiring enforcement in Leon County, Florida.

7. The Court has jurisdiction pursuant to Florida Statute § 26.012(2)(g).

8. On or about July 20, 2022, Borrower duly executed and delivered to Lender a certain (i) Promissory Note, dated July 20, 2022 in the original principal amount of $600,000.00 (the "Note"), and (ii) Real Estate Mortgage Security Agreement and Assignment of Leases and Fixture Filing (the "Mortgage") recorded under O.R. Book 5760, Page 1602 in the Public Records of Leon County, Florida, securing repayment of the Note to Lender with the Property then owned and in possession of Borrower, true and correct copies of which are attached hereto as **Exhibits "A" and "B"**, respectively, and are made a part hereof by reference.

9. On or about July 20, 2022, Guarantor duly executed and delivered to Lender a certain Guaranty and Membership Interest Pledge Agreement ("Pledge Agreement") for 100% of the Borrower's membership interests or units ("Membership Interests") as further security for the Note, a true and correct copy of which is attached hereto as **Exhibit "C"** and made a part hereof by reference.

10. The Note, Mortgage, and Pledge Agreement are further secured by two (2) UCC-1 Financing Statements in favor of Lender, filed on July 26, 2022 under Filing Nos. 202202417261 and 202202417170 with the Florida Secured Transactions Registry (collectively, "UCC-1"), covering all collateral property as more particularly described therein, a true and correct copy of which is attached hereto as composite **Exhibit "D"** and made a part hereof by reference.

11.     Plaintiff owns and holds the Note, Mortgage, Pledge Agreement, and all other related agreements executed by and between Lender and Borrower in connection with the Loan (collectively, the "Loan Documents").

12.     The Property is now owned by Borrower who holds possession of the Property.

13.     Borrower defaulted under the Note and Mortgage by failing to make the payments due, including without limitation the payment due on September 30, 2022, and all subsequent payments.

14.     Lender has demanded payment and accelerated the Note and Mortgage.

15.     Lender, as mortgagee, has declared, or does hereby declares, the full amounts under the Note and Mortgage to be due and payable.

16.     Under the terms of the Note and Mortgage, Borrower owes Lender the outstanding principal sum of $600,000.00, plus unpaid and accrued interest, default interest at 12% per annum, plus late costs at a rate of 5% of the principal amount and accrued interest thereon, plus applicable fees, charges, together with any advances, costs, and reasonable attorneys' fees.

17.     The underlying obligation under the Note and Mortgage are in default and demand for immediate payment of the guaranteed indebtedness has been made. As such, Guarantor is liable to Lender under the terms of the Pledge Agreement arising from the default thereunder.

18.     Plaintiff has retained undersigned counsel to represent Plaintiff in this matter and is obligated to pay the firm its reasonable attorneys' fees and costs incurred. Plaintiff is entitled to collect attorneys' fees and costs from Borrower and Guarantor pursuant to the terms of the Loan Documents.

19.     All conditions precedent to the institution and maintenance of this action have been met, have occurred or been performed, been waived, satisfied and/or have otherwise been excused, discharged, would be futile, or would result in irreparable injury.

**COUNT I**
**FORECLOSURE OF MORTGAGE**
*(against all Defendants)*

20.     Plaintiff adopts and realleges each and every allegation contained in Paragraphs 1 through 19 above as if fully set forth herein.

21.     This is an action to foreclose the Mortgage on the Property situated in Leon County, Florida and within the jurisdiction of this Court.

22.     Plaintiff owns and holds the Loan Documents, including, without limitation, the Note and Mortgage executed by Borrower.

23.     Borrower and Guarantor defaulted under the terms of the Loan Documents by, among other things, failing to make the September 30, 2022 payment and all subsequent payments. Plaintiff demanded payment and accelerated the Note and Mortgage. Defendants failed to cure the aforementioned default.

24.     Plaintiff has declared, or does hereby declare, the full amount payable under the Note and Mortgage to be due.

25.     Borrower has no legally recognized justification or excuse for its default under the Loan Documents.

26.     Borrower and Guarantor are jointly and severally liable to Plaintiff and owe the remaining principal amount due together with interest at the Default Rate, late charges, and costs and attorneys' fees pursuant to the Loan Documents.

27.     The Property is now owned by Borrower which holds possession of the subject property.

28.     Defendants may claim an interest in all or a portion of the Property that is the subject of this action by virtue of certain lease agreements and/or other agreements entered into between Defendants.  Any such interest of other Defendants and all persons or entities claiming thereunder in the Property is for all purposes subordinate, junior, inferior and subject to the liens and security interest evidenced by the Mortgage and Loan Documents.

29.     The Mortgage is a lien superior in dignity to any subsequent right, title, claim, or interest arising out of the Defendants or anyone claiming an interest by, though, or any of them.

30.     All conditions precedent to the acceleration of the Loan Documents, including the Note and Mortgage, and the institution and maintenance of this action have occurred or have been performed, excused, waived or otherwise discharged.

**WHEREFORE**, Plaintiff, 1329 Abraham Street Holdings LLC, requests that the Court: (a) enter judgment determining Plaintiff's priority position in the Property; (b) make an accounting of the sums or ascertain the amount due to Plaintiff by Defendants, Florida State Primitive Baptist Convention Inc. and Miracle Hill Nursing and Rehabilitation Center Inc., under the Loan Documents, including, but not limited to, principal and interest on the Note and Mortgage and for default interest advances if any, title search costs, taxes, expenses and costs, plus pre- and post-interest thereon all sums which have been or may be advanced or incurred by it in protection of its interest in the Property (or any of it) and the collection of the amounts due it, together with Court costs and attorneys' fees pursuant to the terms of the Loan Documents; (c) order that if the sums determined by the Court are not paid immediately, that the Property be sold to satisfy Plaintiff's claims and the costs of the sale, the estate, and right, title and interest of the Defendants and all

persons claiming by, through, under or against said Defendants, or any of them, or other persons or entity since the filing of the notice of Lis Pendens herein, be forever barred and foreclosed, in accordance with the provisions of Fla. Stat. § 45.031; (d) that the rights, title and interest of any Defendants, or any party claiming by, through, under or against any Defendant named herein or hereafter made a Defendant be forever barred and foreclosed; (e) deliver possession of the Property to the purchaser thereof upon proof of the demand or refusal of Defendants to surrender possession; (f) the Clerk of the Court be directed to issue a Writ of Possession without further Order of this Court; (g) Retain jurisdiction over this action to grant a deficiency judgment against the appropriate parties if the proceeds of the sale are insufficient to pay Plaintiff's claims; and (h) the Court retain jurisdiction of this action to make any and all further orders and judgments as may be necessary and proper, including the issuance of a writ of possession and the entry of a deficiency decree, when and if such deficiency decree shall appear proper, if the Defendant(s) have not been discharged in bankruptcy; and further relief as appears just and equitable under the circumstances.

## COUNT II
### SUIT ON THE PROMISSORY NOTE
#### *(against Borrower)*

31.     Plaintiff adopts and realleges each and every allegation contained in Paragraphs 1 through 19 above as if fully set forth herein.

32.     This is a suit by Lender against Borrower for breach of the Note, duly executed by Borrower. *See* Exhibit "A".

33.     Plaintiff owns and holds the Loan Documents, including, without limitation, the Note executed by Borrower.

34.    Borrower defaulted under the terms of the Loan Documents by, *inter alia*, failing to pay all outstanding amounts due upon the maturity of Note on September 30, 2022 and all subsequent payments.

35.    Plaintiff provided notice of the above-referenced default to Borrower and Guarantor.

36.    Borrower and Guarantor have failed and/or refused to respond to Plaintiff's demands or otherwise tender payment of the accelerated amounts due and owing to Plaintiff under the Loan Documents.

37.    Borrower and Guarantor have failed to cure the default and Plaintiff has accelerated the maturity date under the Note and demanded payment in full of the entire indebtedness evidenced and secured by the Loan Documents, including unpaid principal, accrued interest, late charges, attorneys' fees, and costs.

38.    Borrower and Guarantor owe Plaintiff the remaining principal amount due under the Loan Documents, together with interest calculated at the default rate, late charges, prepayment penalties, attorneys' fees and costs.

39.    Lender has performed all conditions precedent to this action.

40.    As a direct and proximate result of Borrower's breach of the Note, Lender has suffered damages.

41.    Pursuant to the terms of the Note, Plaintiff is entitled to reimbursement for its reasonable attorneys' fees and costs incurred in enforcing its rights and remedies under the Loan Documents.

42.    Plaintiff has performed all conditions precedent to this action.

**WHEREFORE**, Plaintiff, 1329 Abraham Street Holdings LLC, demands judgment against Defendants, Florida State Primitive Baptist Convention Inc. and Miracle Hill Nursing and Rehabilitation Center Inc., for the outstanding principal amount due under the Loan Documents, together with interest calculated at the default rate, pre- and post-judgment interest at the prevailing statutory rate, late charges, expenses, costs, taxes, and reasonable attorneys' fees, that the Court retain jurisdiction of this action to make any and all further orders and judgments as may be necessary and proper, and for such other and further relief and the Court may deem just and proper.

**COUNT III**
**ENFORCEMENT OF ASSIGNMENT OF LEASES AND RENTS;**
**TURNOVER OF LEASES AND RENTS**
***(against Borrower)***

43.     Plaintiff adopts and realleges each and every allegation contained in Paragraphs 1 through 19 above as if fully set forth herein.

44.     In accordance with the terms of the Mortgage, Borrower granted a security interest to Plaintiff connection with all of the leases, rents, royalties, profits or income relating thereto (collectively, the "Rents") from the Property, as more particularly set forth in the Mortgage.

45.     Additionally, Borrower executed the Mortgage by which it assigned, granted, and conveyed to Plaintiff all of its rights, title, and interests in and to the Rents from the Property, as more particularly set forth in the Mortgage.

46.     By virtue of Borrower's and Guarantor's default for failure to make its monthly payments, and in accordance with Fla. Stat. § 697.07, as well as the applicable terms of the Mortgage and other Loan Documents, Plaintiff entitled to the entry of an Order requiring immediate surrender of all Rents and profits, as those terms are described in the Loan Documents.

47.     Defendants may claim an interest in all or a portion of the collateral property that is the subject of this action by virtue of certain lease agreements or other agreements entered into

between Defendants. Any such interest of Defendants and all persons or entities claiming thereunder in the Property is for all purposes subordinate, junior, inferior, and subject to the liens and security interest evidenced by the Loan Documents.

**WHEREFORE,** Plaintiff, 1329 Abraham Street Holdings LLC, requests that this Court enter an Order declaring that a default has occurred by Defendants, Florida State Primitive Baptist Convention Inc. and Miracle Hill Nursing and Rehabilitation Center Inc., and determining that Plaintiff is entitled to all Rents as that term is defined in the Loan Documents, including specifically the Mortgage, plus costs and attorneys' fees.

**COUNT IV**
**FORECLOSURE OF SECURITY INTERESTS**
***(against all Defendants)***

48.     Plaintiff adopts and realleges each and every allegation contained in Paragraphs 1 through 19 above as if fully set forth herein.

49.     The Mortgage together with the UCC-1s, by their terms, constitutes a security agreement pursuant to Article 9 of Florida's Uniform Commercial Code.

50.     Plaintiff is the owner and holder of the original Note and Mortgage, which secures Borrower's and Guarantor's payment and performance under the Note, and which grants Plaintiff a security interest in the Property.

51.     On or about July 26, 2022, Plaintiff filed its UCC-1s with the State of Florida Secured Transaction Registry to perfect its security interest in the Property described in the UCC-1s. *See* Exhibit "D".

52.     The default by Borrower and Guarantor under the Loan Documents entitles Plaintiff to foreclose its security interests under the Mortgage and UCC-1s.

53.     Pursuant to the Mortgage and Article 9 of the Uniform Commercial Code, Plaintiff has perfected a security interest in all the property described in the Mortgage and the UCC-1s.

54.     The Property, described in the Mortgage and UCC-1s, is now owned and/or in the possession of Borrower and/or Guarantor.

55.     Under the terms of the Loan Documents, Plaintiff is entitled to foreclose its interests in the real and personal property owned by Borrower and/or Guarantor pursuant to the Mortgage and UCC-1s, which is more particularly described in the UCC-1s. *See* Exhibit "D".

56.     Defendants may claim an interest in all or a portion of the collateral property that is the subject of this action by virtue of certain lease agreements or other agreements entered into between Defendants. Any such interest of Defendants and all persons or entities claiming thereunder in the Property is for all purposes subordinate, junior, inferior, and subject to the liens and security interest evidenced by the Loan Documents.

**WHEREFORE,** Plaintiff, 1329 Abraham Street Holdings LLC, demands judgment foreclosing its security interests under the Loan Documents, together with foreclosure of the security interests in the collateral property owned by Defendants, Florida State Primitive Baptist Convention Inc. and Miracle Hill Nursing and Rehabilitation Center Inc., as set forth in the UCC-1s, foreclosure of the Mortgage pursuant to Count I above, and for such other further relief as the Court deems just and proper.

**COUNT V**
**ACTION ON GUARANTY AND MEMBERSHIP**
**INTEREST PLEDGE AGREEMENT**
***(against all Defendants)***

57.     Plaintiff adopts and realleges each and every allegation contained in Paragraphs 1 through 19 above as if fully set forth herein.

58.     This is an action by Lender to enforce the Pledge Agreement owned and held by Plaintiff.

59.     Plaintiff is the owner and holder of the original Note and Mortgage, which secures Borrower's and Guarantor's payment and performance under the Note, and which grants Plaintiff a security interest in the Property.

60.     Guarantor executed and delivered to Plaintiff the Pledge Agreement which guaranteed the underlying obligation of the Note.

61.     The Note is secured by the Pledge Agreement, duly executed by Guarantor. *See* Exhibits "A" and "C".

62.     Guarantor failed to pay the amount of the guaranteed outstanding balance and indebtedness owed in accordance with the Pledge Agreement after Plaintiff's demand thereof.

63.     Guarantor is the sole member of the Company and owns and holds 100% of the membership interests in the Company.

64.     Guarantor, as Pledgor, pledged, assigned, transferred, and conveyed a security interest and lien, in favor of Plaintiff, for all its rights, title, and interests in the following collateral, whether then owned or existing thereafter (the "Collateral"):

   a.   100% of the membership interests in Company;

   b.   Additional Pledged Collateral;

   c.   Distributions, interest, proceeds, and any other sums due or to become due thereon,

   d.   All instruments, or other property at any time and from time to time received, receivable, or otherwise distributed in respect of or in exchange for any or all of such Membership Interests;

   e.   All general intangibles associated therewith; and

   f.   All proceeds.

65.     Borrower and Guarantor breached the terms of the Note and Mortgage, as set forth *supra*.

66.     Guarantor is in default under the Pledge Agreement by virtue of Borrower's failure to pay amounts due under the Note, as more particularly set forth *supra*.

67.     Plaintiff declares the Pledge Agreement in default and demands the surrender forfeiture, and foreclosure of the Collateral pledged to it and requires all distributions, interest and/or amounts paid with respect to the Collateral be delivered to it in payment of, and as additional collateral security for, the Loan.

68.     Pursuant to the Pledge Agreement, upon Borrower's and Guarantor's defaults as alleged herein, Plaintiff is entitled to immediate ownership and all rights associated with 100% of the membership interests in the Company.

69.     Pursuant to the terms of the Note and Pledge Agreement, Plaintiff is entitled to reimbursement for its reasonable attorneys' fees and costs incurred in enforcing its rights and remedies under the Loan Documents, including the Pledge Agreement.

**WHEREFORE**, Plaintiff, 1329 Abraham Street Holdings LLC, respectfully requests this Court enter a judgment in its favor and against Defendants, Florida State Primitive Baptist Convention Inc. and Miracle Hill Nursing and Rehabilitation Center Inc., for damages, for principal due under the Note plus interest, late fees, costs, and reasonable attorneys' fees, to declare that Plaintiff is the rightful owner of, and entitled to immediate ownership of and all rights associated with, one hundred percent (100%) of the membership interests in Defendant, Florida State Primitive Baptist Convention, Inc., and to award Plaintiff its reasonable attorneys' fees and costs, and all of the relief the Court deems just and appropriate.

## COUNT VI
### IMPOSITION OF FLA. STAT. § 605.0503 CHARGING ORDER
### AND FORECLOSURE OF SECURITY INTEREST IN COLLETERAL
### *(against all Defendants)*

70.     Plaintiff adopts and realleges each and every allegation contained in Paragraphs 1 through 19 above as if fully set forth herein.

71.     This is an action by Plaintiff against Borrower and Guarantor to impose a charging order pursuant to Florida Statute § 605.0503 and foreclosure of the security interest in the pledged collateral under the Pledge Agreement.

72.     Repayment of the Note given by Borrower to Plaintiff was secured by the Pledge Agreement, pursuant to which Borrower granted Plaintiff a security interest in one hundred percent (100%) legal and beneficial membership interest in the Company (the "Pledged Collateral").

73.     The Pledged Collateral is now owned by Borrower, who holds possession of the Pledged Collateral.

74.     As described *supra*, Borrower defaulted under the Note due to, *inter alia*, Borrower's failure and/or refusal to pay the amounts required under the Note, which is now due and owing in full.

75.     Plaintiff gave multiple notices of the default to Borrower and Guarantor; however, to date, the Borrower has not paid the amounts due under the Loan Documents.

76.     Borrower's default upon the Note constitutes a concurrent breach of the Pledge Agreement.

77.     Florida Statute § 605.0503 provides Plaintiff with a statutorily prescribed "charging order" remedy which Plaintiff now hereby exercise and invokes.

78.     Under Florida law, a "charging order" is not the sole and exclusive remedy if distributions under a "charging order" will not satisfy the Note indebtedness within a reasonable

time, which they will not. Consequently, Plaintiff hereby invokes its contractual and equitable right under the Pledge Agreement and Florida law for entry of an order foreclosing its security interest and ordering that the Pledged Collateral be sold such that the purchaser at the court-ordered foreclosure sale will acquire all of Borrower's membership interest in the Company, and Borrower will cease to be a member of the Company, with the proceeds of such sale being applied toward the repayment of the Note, including the remaining principal amount due under the Note, accrued interest at the Default Rate (as defined in the Note), pre- and post-judgment interest, attorneys' fees and costs.

79.     As a direct and proximate result of Borrower's breach of the Note, Plaintiff is entitled to foreclosure upon the Pledged Collateral.

80.     In addition, if needed to effect the requested foreclosure, Plaintiff requests an injunction prohibiting Borrower and Guarantor from transferring, disposing, conveying, pledging, or hypothecating the Pledged Collateral.

81.     Plaintiff has suffered damage due to Borrower's and Guarantor's breaches of the Loan Documents as described herein.

82.     Pursuant to the terms of the Loan Documents, Borrower and Guarantor are jointly and severally responsible for Plaintiff's fees, costs, and expenses incurred.

83.     All conditions precedent to the initiation and maintenance of this action to foreclose the Pledge Agreement have occurred, are excused, or have been waived.

**WHEREFORE**, Plaintiff, 1329 Abraham Holdings LLC, requests the Court enter judgment against Defendants, Florida State Primitive Baptist Convention Inc. and Miracle Hill Nursing and Rehabilitation Center Inc., as follows: (i) award Plaintiff actual and compensatory damages as provided by law in an amount to be determined by the Court; (ii) award Plaintiff its

costs, disbursements, and attorneys' fees incurred in bringing this action in an amount to be determined by the Court; (iii) award Plaintiff a "charging order" pursuant to Fla. Stat. § 605.0503, and upon a showing that a "charging order" will not satisfy the Note indebtedness within a reasonable time, alternatively, permitting and entering an order foreclosing Plaintiff's security interest in the Pledged Collateral described in the Pledge Agreement as allowed by Florida law and the Loan Documents; (iv) requiring Defendants, Florida State Primitive Baptist Convention Inc. and Miracle Hill Nursing and Rehabilitation Center Inc., to produce all documents evidencing the Pledged Collateral, including all financial, accounting, certificates, and bank records; (v) ordering an injunction prohibiting Defendants, Florida State Primitive Baptist Convention Inc. and Miracle Hill Nursing and Rehabilitation Center Inc., from transferring, disposing, conveying, pledging, or hypothecating the Pledged Collateral pursuant to Fla.R.Civ.P. 1.610; and (vi) award Plaintiff such other and further relief as the Court may deem just and proper.

Dated: April 5, 2023

Respectfully submitted,

**READ LAW PLLC**
*Counsel for Plaintiff*
25 SE 2nd Avenue, Suite 828
Miami, Florida 33131
Phone: (305) 209-2131
asr@alexisreadlaw.com

By: */s/ Alexis S. Read*
Alexis S. Read, Esq.
Fla. Bar No. 98084

## VERIFICATION OF COMPLAINT

Undersigned, is the _Authorized representative_ (title), of 1329 Abraham Holdings LLC, and responsible for the collection of the loan transaction which is subject to the instant action.

Under penalty of perjury, undersigned declares that undersigned has read the foregoing Complaint in this action and the facts alleged therein are true and correct to the best of undersigned's knowledge and belief.

**1329 Abraham Holdings LLC,**
**A Delaware limited liability company**

By: _____

Name: _Eli Eliat Belhassen_

Title: _Authorized Representative_

Date: _4.4.2023_

# EXHIBIT "A"

# PROMISSORY NOTE

$600,000.00                                                                     July 20, 2022

1.     **Agreement to Pay**.  **FOR VALUE RECEIVED**, **Miracle Hill Nursing and Rehabilitation Center, Inc.,** a Florida Not For Profit Corporation (the "**Borrower**"), hereby promises to pay to the order of **1329 Abraham Street Holdings LLC**, a Delaware limited liability company, and its successors and assigns ("**Lender**"; collectively with the Borrower, the "Parties"), amounts disbursed hereunder up to the aggregate sum of SIX HUNDRED THOUSAND AND 00/100 DOLLARS **($600,000.00)** ("**Loan**"), at the place and in the manner hereinafter provided, and any and all other amounts which may be due and payable hereunder from time to time, on or before September 30, 2022 (the "**Maturity Date**"); provided that in no event shall the Maturity Date be later than the Closing Date pursuant to the APA (as defined herein).  Borrower acknowledges that Lender has made the proceeds of the Loan available to Borrower for general corporate and business related purposes.

The Loan shall be disbursed by Lender to Borrower as follows:

$200,000.00 by July 20, 2022;
$200,000.00 by August 3, 2022;
$200,000.00 by August 22, 2022.

2.     **Interest Rate.**

2.1     **Interest Prior to Default**.  Interest shall not accrue on the outstanding principal balance of this Note prior to either of the following after which interest will accrue at the Default Rate (as defined herein): i) the Maturity Date and/or ii) following the occurrence of an Event of Default.

2.2     **Interest After Default**.  From and after the Maturity Date and/or following the occurrence of an Event of Default, interest shall accrue on the balance of principal remaining unpaid during any such period at an annual rate ("**Default Rate**") equal to twelve percent (12.0%); provided, however, in no event shall the Default Rate exceed the maximum rate permitted by law.  The interest accruing under this paragraph shall be immediately due and payable by Borrower to the holder of this Note upon demand and shall be additional indebtedness evidenced by this Note.

2.3     **Interest Calculation**.  Interest on this Note shall be calculated on the basis of a year of three hundred and sixty (360) days, and the actual number of days elapsed.

3.     **Payment Terms.**

3.1     **Principal and Interest**.  Payments of principal and interest due under this Note, if not sooner declared to be due in accordance with the provisions hereof, shall be made as follows.

(a)     The unpaid principal balance of this Note, if not sooner paid or declared to be due in accordance with the terms hereof, together with all accrued and unpaid interest thereon and any other amounts due and payable hereunder or under any other Loan Document (as hereinafter defined), shall be due and payable in full on the Maturity Date or upon the occurrence and during the continuance of an Event of Default.

3.2     **Application of Payments**.  Prior to the occurrence of an Event of Default, all payments and prepayments on account of the indebtedness evidenced by this Note shall be applied as follows: (a) first, to fees, expenses, costs and other similar amounts then due and payable to Lender, including, without limitation, any late charges due hereunder, (b) second, to the payment of principal due in the month in which the payment or prepayment is made, (d) third, to any escrows, impounds or other amounts which may then be due and payable under the Loan Documents, (e) fourth, to any other amounts then due Lender hereunder or under any of the Loan Documents, and (f) last, to the unpaid principal balance of this Note in the inverse order of maturity.  Any prepayment on account of the indebtedness evidenced by this Note shall not extend or postpone the due date.  After an Event of Default has occurred and is continuing, payments may be applied by Lender to amounts owed hereunder and under the Loan Documents in such order as Lender shall determine, in its sole discretion

**Method of Payments**.  All payments hereunder shall be paid by automatic debit, wire transfer, check or in coin or currency which, at the time or times of payment, is the legal tender for public and private debts in the United States of America and shall be made at such place as Lender or the legal holder or holders of this Note may from time to time appoint in the payment invoice or otherwise in writing, and in the absence of such appointment,      then      at      the      offices      as      directed      by      Lender.  Payment made by check shall be deemed paid on the date Lender receives such check; provided, however, that if such check is subsequently returned to Lender unpaid due to insufficient funds or otherwise, the payment shall not be deemed to have been made and shall continue to bear interest until collected.  Notwithstanding the foregoing, the final payment due under this Note must be made by wire transfer or other final funds.

3.3     **Late Charge**.  If any payment of interest or principal due hereunder is not made within ten (10) days after such payment is due in accordance with the terms hereof, then, in addition to the payment of the amount so due, Borrower shall pay to Lender a "late charge" of five cents for each whole dollar so overdue to defray part of the cost of collection and handling such late payment.  Borrower agrees that the damages to be sustained by the holder hereof for the detriment caused by any late payment are extremely difficult and impractical to ascertain, and that the amount of five cents for each one dollar due is a reasonable estimate of such damages, does not constitute interest, and is not a penalty.

3.4     **Prepayment**.  Provided that no Event of Default then exists, Borrower may voluntarily prepay the principal balance of this Note, in whole or in part, without penalty, at any time upon prior notice to Lender; provided, however, that each partial

prepayment shall be in an amount not less than One Thousand and 00/100 dollars ($1,000.00)]

4. **Security**. This Note is secured by that certain Real Estate Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing (the "**Mortgage**") and Membership Interest Pledge Agreement (the "**Pledge**") between Lender and Borrower, dated of even date herewith. Hereinafter, this Note, the Pledge and any other document now or hereafter made or given in connection with this Note and the Pledge, which is intended to evidence or secure payment of this Note or delivered to induce Lender to disburse the proceeds of the Loan, as such documents may hereafter be amended, restated or replaced from time to time, are hereinafter collectively referred to as the "**Loan Documents**". Reference is hereby made to the Loan Documents (which are incorporated herein by reference as fully and with the same effect as if set forth herein at length) for a statement of the covenants and agreements contained therein, a statement of the rights, remedies, and security afforded thereby, and all matters therein contained.

5. **Events of Default**. The occurrence of any one or more of the following events shall constitute an "**Event of Default**" under this Note:

5.1     the failure to execute that certain Asset Purchase Agreement between Miracle Hill Nursing and Rehabilitation Center, Inc., and Lender or its designee, (the "**APA**") and/or that certain Operations Transfer Agreement between Miracle Hill Nursing and Rehabilitation Center, Inc., and Lender or its designee, (the "**OTA**") pursuant to that certain Letter of Intent between Borrower and Lender dated as of June 20, 2022 (the "**LOI**") within thirty (30) days of execution of this Note;

5.2     the occurrence of the termination of the APA by Borrower or Lender, provided, however, that Borrower has the right to prepay the unpaid principal balance prior to any termination without penalty, at which point the Loan shall be paid in full and this Note shall be satisfied in full;

5.3     the failure by Borrower to pay any installment of principal payable pursuant to this Note or any other amount payable to Lender under this Note or any of the other Loan Documents when any such payment is due in accordance with the terms hereof or thereof;

5.4     the occurrence of the dissolution, insolvency, winding-up, death or legal incompetency, as applicable, of Borrower;

5.5     a proceeding under any bankruptcy, reorganization, arrangement of debt, insolvency, readjustment of debt or receivership law or statute is filed against any Borrower, and such proceeding is not dismissed within sixty (60) days of the date of its filing, or a proceeding under any bankruptcy, reorganization, arrangement of debt, insolvency, readjustment of debt or receivership law or statute is filed by Borrower, or any Borrower makes an assignment for the benefit of creditors, or Borrower takes any action to authorize any of the foregoing;

5.6     Borrower is enjoined, restrained, or in any way prevented by the order of any court or any administrative or regulatory agency from conducting all or any material part of its business affairs and such order is not vacated within sixty (60) days;

5.7     a breach by Borrower shall occur under any agreement, document or instrument (other than an agreement, document or instrument evidencing the lending of money), whether heretofore, now or hereafter existing between Borrower and any other person and the effect of such breach has had or is reasonably likely to have or create a material adverse effect on Borrower;

5.8     there shall be instituted in any court criminal proceedings against Borrower, or Borrower shall be indicted for any state or federal crime; or

5.9     the material breach by Borrower of any of the terms, conditions, covenants or requirements of this Note, the Pledge, or any of the other Loan Documents.

6.     **Remedies**.  At the election of the holder hereof, and without notice, the principal balance remaining unpaid under this Note and any other amounts due hereunder, shall be and become immediately due and payable in full upon the occurrence of any Event of Default. Failure to exercise this option shall not constitute a waiver of the right to exercise same in the event of any subsequent Event of Default.  No holder hereof shall, by any act of omission or commission, be deemed to waive any of its rights, remedies or powers hereunder or otherwise unless such waiver is in writing and signed by the holder hereof, and then only to the extent specifically set forth therein.  The rights, remedies and powers of the holder hereof, as provided in this Note and in all of the other Loan Documents are cumulative and concurrent, and may be pursued singly, successively or together against Borrower and any other security given at any time to secure the repayment hereof, all at the sole discretion of the holder hereof.  If any suit or action is instituted or attorneys are employed to collect this Note or any part hereof, Borrower promises and agrees to pay all costs of collection, including reasonable attorneys' fees and court costs.

In addition to and without limiting the foregoing, upon the occurrence of an Event of Default hereunder Pledgee shall be entitled to fully replace the Board of Directors (the "**Board**") of the Company and replace the Board with designees of Pledgee selected by Pledgee in its sole discretion without any other criteria; provided that such new Board may not take action with respect to Borrower that would result in Lender's receipt of amounts in excess of the balance due hereunder with respect to the Loan.

7.     **Security for Loan**. Borrower hereby grants to Lender a continuing security interest in, and lien on, all right title and interest in any and all of its assets (the "**Collateral**"), including but not limited any assets listed on **Exhibit A** attached hereto, to secure the prompt and complete payment when due of the Loan and all amounts due under this Note.

7.1     Borrower hereby authorizes Lender, its counsel or its representative, at any time and from time to time, to file UCC Financing Statements and amendments thereto covering the Collateral in such jurisdictions, as Lender may deem necessary or desirable to perfect the security interests granted herein.

7.2     Borrower agrees that from time to time, it will promptly execute and deliver all reasonable instruments and documents, and take all actions that Lender may request, for the attachment, perfection and maintenance of the priority of, the security interest of Lender in any and all of the Collateral or to enable Lender to exercise and enforce any and all of its rights, powers and remedies hereunder with respect to any and all of the Collateral.

7.3     Lender may exercise in respect of any or all of the Collateral all rights, remedies and powers provided for herein, by law, in equity or otherwise available to it, including all the rights and remedies of a secured party under the Uniform Commercial Code (the "**UCC**"), as applicable.

8.     **Covenants and Waivers**.  Borrower and all others who now or may at any time become liable for all or any part of the obligations evidenced hereby expressly agree hereby to be jointly and severally bound, and jointly and severally: (i) waive and renounce any and all redemption and exemption rights and the benefit of all valuation and appraisement privileges against the indebtedness evidenced by this Note or by any extension or renewal hereof; (ii) waive presentment and demand for payment, notices of nonpayment and of dishonor, protest of dishonor, and notice of protest; (iii) except as expressly provided in the Loan Documents, waive any and all notices in connection with the delivery and acceptance hereof and all other notices in connection with the performance, default, or enforcement of the payment hereof or hereunder; (iv) waive any and all lack of diligence and delays in the enforcement of the payment hereof; (v) agree that the liability of Borrower, guarantor, endorser or obligor shall be unconditional and without regard to the liability of any other person or entity for the payment hereof, and shall not in any manner be affected by any indulgence or forbearance granted or consented to by Lender to any of them with respect hereto; (vi) consent to any and all extensions of time, renewals, waivers, or modifications that may be granted by Lender with respect to the payment or other provisions hereof, and to the release of any security at any time given for the payment hereof, or any part thereof, with or without substitution, and to the release of any person or entity liable for the payment hereof; and (vii) consent to the addition of any and all other makers, endorsers, guarantors, and other obligors for the payment hereof, and to the acceptance of any and all other security for the payment hereof, and agree that the addition of any such makers, endorsers, guarantors or other obligors, or security shall not affect the liability of Borrower, any guarantor and all others now liable for all or any part of the obligations evidenced hereby.  This provision is a material inducement for Lender making the Loan to Borrower.

9.     **Other General Agreements**.

9.1     Borrower agrees that the Loan evidenced by this Note is an exempted transaction under the Truth In Lending Act, 15 U.S.C., Section 1601, *et seq.*; and the Loan is a loan for business purposes that does not, and when disbursed will not, violate the provisions of the usury laws of any state which may have jurisdiction over this transaction, Borrower or any property securing the Loan.

9.2     Time is of the essence hereof.

9.3     This Note is governed and controlled as to validity, enforcement, interpretation, construction, effect and in all other respects by the statutes, laws and decisions of the State of Florida. This Note may not be changed or amended orally but only by an instrument in writing signed by the party against whom enforcement of the change or amendment is sought.

9.4     Lender shall not be construed for any purpose to be a partner, joint venturer, agent or associate of Borrower or of any lessee, operator, concessionaire or licensee of Borrower in the conduct of its business, and by the execution of this Note, Borrower agrees to indemnify, defend, and hold Lender harmless from and against any and all damages, costs, expenses and liability that may be incurred by Lender as a result of a claim that Lender is such partner, joint venturer, agent or associate.

9.5     All funds disbursed to or for the benefit of Borrower, will be disbursed in Tallahassee, Florida.

9.6     If this Note is executed by more than one party, the obligations and liabilities of Borrower under this Note shall be joint and several and shall be binding upon and enforceable against Borrower and their respective successors and assigns. This Note shall inure to the benefit of and may be enforced by Lender and its successors and assigns.

9.7     If any provision of this Note is deemed to be invalid by reason of the operation of law, or by reason of the interpretation placed thereon by any administrative agency or any court, the validity and enforceability of the remaining provisions, or portions or applications thereof, shall not be affected thereby and shall remain in full force and effect.

9.8     If the interest provisions herein or in any of the Loan Documents shall result, at any time during the Loan, in an effective rate of interest which, for any month, exceeds the limit of usury or other laws applicable to the Loan, all sums in excess of those lawfully collectible as interest of the period in question shall, without further agreement or notice between or by any party hereto, be applied upon principal immediately upon receipt of such monies by Lender, with the same force and effect as though the payer has specifically designated such extra sums to be so applied to principal and Lender had agreed to accept such extra payment(s) as a premium-free prepayment. Notwithstanding the foregoing, however, Lender may at any time and from time to time elect by notice in writing to Borrower to reduce or limit the collection to such sums which, when added to the said first-stated interest, shall not result in any payments toward principal in accordance with the requirements of the preceding sentence. In no event shall any agreed to or actual exaction as consideration for this Loan transcend the limits imposed or provided by the law applicable to this transaction for the use or detention of money or for forbearance in seeking its collection.

9.9     Lender may at any time assign its rights in this Note and the Loan Documents, or any part thereof and transfer its rights in any or all of the Collateral, and Lender thereafter shall be relieved from all liability with respect to such Collateral. In

addition, Lender may at any time sell one or more participations in the Note. Borrower may not assign its interest in this Note, or any other agreement with Lender or any portion thereof, either voluntarily or by operation of law, without the prior written consent of Lender.

10.     **Notices**.  Any notices, communications and waivers under this Agreement shall be in writing and shall be (i) delivered in person, (ii) mailed, postage prepaid, either by registered or certified mail, return receipt requested, (iii) by overnight express carrier, or (iv) by email transmission, addressed in each case as follows:

To Lender:          1329 Abraham Street Holdings LLC
                    c/o Gutnicki LLP
                    4711 Golf Road, Suite 200
                    Skokie, IL 60076
                    Attn: Jacob Sod
                    Email: jacob@milrosecap.com

                    With a copy to:

                    GUTNICKI LLP
                    4711 Golf Road, Suite 200
                    Skokie, IL 60076
                    Attn: Aaron Rokach
                    Email: arokach@gutnicki.com

To Borrower:        Elder Dr. Willie J. Williams
                    327 Bluewater Falls Court
                    Apollo Beach, FL 33572
                    Email: drwjw55@yahoo.com

                    With a copy to:

                    Adina L. Pollan, Esq.
                    10407 Centurion Pkwy North
                    Suite 200
                    Jacksonville, FL 32256
                    Email: apollan@mcglinchey.com

11.     **Authority and Non-Contravention**.   Borrower represents and warrants to Lender that Borrower has full authority to enter into the transactions contemplated herein.

12.     **Consent to Jurisdiction. TO INDUCE LENDER TO ACCEPT THIS NOTE, BORROWER IRREVOCABLY AGREES THAT, SUBJECT TO LENDER'S SOLE AND ABSOLUTE ELECTION, ALL ACTIONS OR PROCEEDINGS IN ANY WAY ARISING OUT OF OR RELATED TO THIS NOTE WILL BE LITIGATED IN COURTS HAVING SITUS IN <u>LEON</u> COUNTY, FLORIDA. BORROWER HEREBY CONSENTS AND SUBMITS TO THE JURISDICTION OF ANY COURT LOCATED WITHIN**

**TALLAHASSEE, FLORIDA, WAIVES PERSONAL SEVICE OF PROCESS UPON BORROWER, AND AGREES THAT ALL SUCH SERVICE OF PROCESS MAY BE MADE BY REGISTERED MAIL DIRECTED TO BORROWER AT THE ADDRESS STATED IN HEREIN AND SERVICE SO MADE WILL BE DEEMED TO BE COMPLETED UPON ACTUAL RECEIPT.**

13.    **<u>Waiver of Jury Trial</u>. BORROWER AND LENDER (BY ACCEPTANCE OF THIS NOTE), HAVING BEEN REPRESENTED BY COUNSEL, EACH KNOWINGLY AND VOLUNTARILY WAIVES ANY RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO ENFORCE OR DEFEND ANY RIGHTS (a) UNDER THIS NOTE OR ANY RELATED AGREEMENT OR UNDER ANY AMENDMENT, INSTRUMENT, DOCUMENT OR AGREEMENT DELIVERED OR WHICH MAY IN THE FUTURE BE DELIVERED IN CONNECTION WITH THIS NOTE OR (b) ARISING FROM ANY BANKING RELATIONSHIP EXISTING IN CONNECTION WITH THIS NOTE, AND AGREES THAT ANY SUCH ACTION OR PROCEEDING WILL BE TRIED BEFORE A COURT AND NOT BEFORE A JURY. BORROWER AGREES THAT IT WILL NOT ASSERT ANY CLAIM AGAINST LENDER ON ANY THEORY OF LIABILITY FOR SPECIAL, INDIRECT, CONSEQUENTIAL, INCIDENTAL OR PUNITIVE DAMAGES.**

[SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, Borrower has executed and delivered this Promissory Note as of the day and year first written above.

**BORROWER**:

**MIRACLE HILL NURSING AND REHABILITATION CENTER, INC.,**
a Florida Not For Profit Corporation

By: _Willie J Williams_

Name: Willie J. Williams

Its: President

# EXHIBIT A

## Collateral

All assets of Borrower, whether now owned or hereafter acquired or arising, together with all proceeds thereof, and all additions and accessions thereto.

# EXHIBIT "B"

This Instrument Prepared By
and Record and Return to:
Aaron Rokach, Esq.
Gutnicki, LLP
4711 Golf Road, Suite 200
Skokie, Illinois 60076

---

### FOR USE BY RECORDER'S OFFICE

**NOTE TO RECORDING CLERK**: FLORIDA DOCUMENTARY STAMP TAXES IN THE AMOUNT OF $2,100.00 AND NONRECURRING INTANGIBLE TAXES IN THE AMOUNT OF $ 1,200.00 ARE BEING PAID UPON THE RECORDATION OF THIS INSTRUMENT.

---

## REAL ESTATE MORTGAGE SECURITY AGREEMENT AND ASSIGNMENT OF LEASES AND FIXTURE FILING

This REAL ESTATE MORTGAGE, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING (as amended, restated, replaced, supplemented, or otherwise modified from time to time, the "**Mortgage**") dated as of July 20, 2022, is executed by **Miracle Hill Nursing and Rehabilitation Center, Inc.**, a Florida Not For Profit Corporation (the "**Mortgagor**") to and for the benefit of **1329 Abraham Street Holdings LLC**, a Delaware, a limited liability company, as mortgagee ("**Lender**").

### RECITALS:

I.      Mortgagor has requested that Lender extend to Mortgagor a loan up to the aggregate sum of Six Hundred Thousand and 00/100 Dollars ($600,000.00) (such loan as from time to time modified or amended is herein referred to as the "**Loan**").

II.     The Loan shall be evidenced by a certain Promissory Note executed by Mortgagor of even date herewith and concurrently with this Mortgage and payable to the order of Lender up to the aggregate sum of Six Hundred Thousand and 00/100 Dollars ($600,000.00), as from time to time modified, amended, renewed, extended or replaced (such loan as from time to time modified or amended is herein referred to as the "**Note**"). "**Loan Document**" and "**Loan Documents**" shall mean individually and collectively, this Mortgage, the Note and all other documents evidencing the Loan or entered into by Mortgagor in connection with the indebtedness secured hereby as such documents and agreements may be modified or amended from time to time and/or any documents and agreements which replace or restate such documents and agreements;

{1145/065/00410506.2}

III.    Lender requires, among other things, as a condition to making the Loan that Mortgagor execute and deliver this Mortgage to Lender.

## GRANTING CLAUSES

FOR GOOD AND VALUABLE CONSIDERATION, including the extension of certain indebtedness to Mortgagor which is secured hereby, the receipt of which is hereby acknowledged, Mortgagor hereby irrevocably, unconditionally and absolutely mortgages, warrants, grants, transfers, pledges, sets over, bargains, sells, enfeoffs, deeds, conveys and assigns to Lender, and transfers and grants to Lender a security interest in, all estates, rights, title and interest which Mortgagor now has or may later acquire in and to the following properties, rights and interests:

A.    The real estate located in Leon County, Florida that is more particularly described in Exhibit "A" attached hereto and by reference made a part hereof (hereinafter referred to as the **"Real Estate"**);

B.    All of the present and future estates, interests and rights of Mortgagor in and to (i) the Real Estate, (ii) all real estate in which Mortgagor may now or hereafter acquire an interest by reason of any accession or accretion with respect to the Real Estate and (iii) all real estate situated within the rights-of-way of any streets, alleys and roads adjoining the Real Estate;

C.    All buildings, structures, improvements and fixtures (including but not limited to all lighting fixtures and mechanical equipment) now or hereafter erected or placed in or upon the Real Estate or now or hereafter attached to or used in connection with the Real Estate to the extent such items may be considered part of the Real Estate under applicable law;

D.    All tenements, hereditaments, easements, appurtenances and other rights and privileges thereunto now or hereafter attaching and belonging, or in any way appertaining to the Real Estate, including without limitation (i) all surface and subsurface soils, (ii) all minerals, elements, oil, gas, and other commercially valuable substances which may be in, under or produced from any part of the Real Estate, (iii) all air rights, and (iv) all water and water rights;

E.    All rents, issues, profits, income, cash, proceeds, accounts, accounts receivable, instruments, letter of credit rights, insurance proceeds, deposit and other accounts, contract rights and general intangibles arising of or from the Real Estate or the improvements from time to time located thereon, including but not limited to the rents, income and profits arising from the operation of any business and all fees, charges, accounts or other payments for the use or occupancy of rooms and other public facilities in any hotel, motel, or other lodging properties located on the Real Estate (funds obtained as such rents, income, profits, fees, charges, accounts or other payments and held in any reserve, account or credit balance shall retain the character of such rents, income, profits, fees, charges, accounts or other payments);

F.    All interests, estates or other rights and claims, arising in law or in equity, which Mortgagor now has or may hereafter acquire in any of the foregoing, including without limitation any greater estate Mortgagor may hereafter acquire in the Real Estate or improvements located thereon (the interests, estates and other rights and claims described in paragraphs A through F are hereinafter collectively referred to as the **"Premises"**);

4859-3593-8599, v. 4

G.     All present and future guaranties of the performance of any lessee under any of the Leases and all letters of credit issued, and all other collateral granted, as security for the obligations of any tenant arising under or in connection with any of the Leases;

H.     All monies, deposit accounts, furniture, equipment, inventory, fixtures, accounts, accounts receivable, chattel paper, documents, investment property, trademarks and all trade name agreements, logos, licenses, instruments, contract rights, insurance proceeds, commercial tort claims, franchise agreements, software, letter of credit rights, and general intangibles (including payment intangibles) in which Mortgagor now or hereafter has an interest, individually or with others, and which are located upon, used in connection with, related to or arising out of the Premises, and all additions, accessions and accretions to, replacements and substitutions for, products of and proceeds from any of the foregoing;

I.     All insurance policies relating to the Premises and all claims and rights to payment of proceeds and other sums payable thereunder or in connection therewith;

J.     All awards, compensation and settlements in lieu thereof made as a result of the taking by power of eminent domain of the whole or any part of the Premises, including any awards for damages sustained to the Premises, for a temporary taking, change of grade of streets or taking of access;

K.     All present and future deposits and revenues relating to the Premises including without limitation security deposits, replacement revenue escrows, tax and insurance escrows and working capital reserves or escrows, and all funds of Mortgagor from time to time on deposit with Lender;

L.     All present and future building permits, operating permits, variances, licenses, governmental permits and approvals, utility permits, certificates of occupancy, and other permits, approvals and authorizations now or hereafter issued in connection with and the development, construction, equipping, maintenance or operation of the Premises;

M.     All present and future contracts or agreements relating to the design, development, construction, furnishing, equipping, operation, use or maintenance of the Premises, including without limitation all construction contracts and subcontracts, architectural contracts, engineering contracts and other design contracts and purchase agreements;

N.     All present and future contractor's, subcontractor's and supplier's warranties, guarantees of performance and undertakings with respect to services or materials furnished in connection with the design, development, construction, equipping, operation, use or maintenance of the Premises;

O.     All present and future service and other agreements relating to the operation, management, maintenance and repair of the Premises or the buildings and improvements thereon, whether now owned by Mortgagor or hereafter acquired or arising, including without limitation any present or future management agreement relating to the management or operation of the Premises;

P.     All present and future plans and specifications, surveys, site plans, soil reports, drawings and papers relating to the Premises and the development, design, construction and equipping of the improvements on the Premises, whether now owned by Mortgagor or hereafter acquired or arising;

Q.     All present and future contracts and agreements providing for financial incentives, grants, tax credits, loans, infrastructure development by third parties or other financial support in connection with the design, development, construction, equipping, operation, use or maintenance of the Premises, including without limitation all tax increment financing agreements, bond financing agreements, tax credit allocations and awards, agreements for payment in lieu of taxes and other governmental project agreements;

R.     All building supplies and materials ordered or purchased for use in connection with the construction and equipping of the improvements on the Premises, whether now owned by Mortgagor or hereafter acquired or arising;

S.     All proceeds and contract rights and payments payable to Mortgagor under any loan commitment for financing of the Premises;

T.     Any contract or agreement previously or hereafter entered into by Mortgagor (but specifically excluding any of Mortgagor's obligations or liabilities arising in connection with any such contract or agreement) which is an interest rate protection agreement, foreign currency exchange agreement, commodity price protection agreement, or other interest or currency exchange rate or commodity price hedging arrangement, including without limitation any contract or agreement relating to a rate swap, basis swap, forward rate transaction, commodity swap, commodity option, equity or equity index swap, equity or equity index option, bond option, interest rate option, foreign exchange transaction, cap transaction, floor transaction, collar transaction, forward transaction, currency swap transaction, cross-currency rate swap transaction, currency option or any other similar hedging arrangement or transaction;

U.     All present and future purchase and sale agreements for the purchase of any portion of the Premises or other property located on the Premises, including without limitation, security deposits, earnest money deposits, association fees or assessments, and related escrows;

V.     To the extent permitted by applicable law, all present and future permits, licenses, governmental approvals, certificates of need, and other rights relating to the operation of assisted living facilities, nursing home facilities, rehabilitation facilities or other housing on the Premises together with all rights and approvals for the reimbursement by Medicare or Medicaid, or any other federal, state or local governmental entity, for such services and facilities, whether now owned by Mortgagor or hereafter acquired or arising; and

W.     All additions, accessions and accretions to, replacements and substitutions for, products of and any and all cash and non-cash proceeds from any of the property described above.

The personal property described above, including without limitation the property, rights, interests and claims described in paragraphs H through X above, are hereinafter collectively referred to as the "Chattels". Notwithstanding anything contained herein, Chattels shall not include any personal property or trade fixtures which any tenant of the Premises owns and is entitled to remove pursuant

4859-3593-8599, v. 4

to its lease except to the extent that Mortgagor shall have any right or interest in such personal property. Furthermore, (i) the collateral assignment of the rights and interests of Mortgagor in any franchise or license agreement relating to the operation of any hotel shall be limited and subject to the terms and conditions set forth in any written agreement between Lender and the franchisor under the franchise agreements, and (ii) the collateral assignment of any governmental permits and licenses shall be subject to any applicable legal limitations on the assignment of such items. The Premises, Leases and Chattels are hereinafter collectively referred to as the "Property."

TO HAVE AND TO HOLD the Property unto Lender, its successors and assigns forever, subject however to the terms and conditions herein, and Mortgagor does hereby bind itself, its successors and assigns, to WARRANT AND FOREVER DEFEND the title to the Property unto Lender against every person whomsoever claiming or to claim the same or any part thereof.

### MORTGAGOR HEREBY FURTHER ASSIGNS, REPRESENTS, WARRANTS, COVENANTS AND AGREES AS FOLLOWS:

1.      The Indebtedness and Obligations Secured. This Mortgage is given to secure (i) the performance and observance of the covenants and agreements contained herein and in any other agreement executed to Lender in connection with the indebtedness secured hereby, which portion of the indebtedness of the Note secured hereby shall be up to the aggregate amount of One Million Two Hundred Thousand and 00/100 Dollars ($1,200,000.00), (ii) the payment and performance when due of all present and future indebtedness and obligations of Mortgagor to Lender, whether direct or indirect, absolute or contingent and whether evidenced by promissory notes, agreements, checks, drafts, letters of credit, bills, overdrafts, open accounts or otherwise, and (iii) any and all extensions, renewals, increases, modifications, amendments, restatements and replacements of any present and future indebtedness and obligations of Mortgagor to Lender. The indebtedness and obligations secured by this Mortgage include, without limitation, the indebtedness evidenced by or arising in connection with the following:

a.      the Note, with interest thereon at the rate and payable in the manner described in the Note, which is due and payable on or before i) the Maturity Date and/or ii) following the occurrence of an Event of Default under the Note, as from time to time modified, amended, increased, renewed or extended, and any notes that renew, restate or replace the Note;

b.      the other Loan Documents, as from time to time modified, amended, replaced or restated, provided however, this Mortgage shall not secure the indebtedness and obligations arising under any Loan Document that expressly states that the indebtedness and obligations arising under such Loan Document are to be unsecured;

c.      any and all extensions, renewals, increases, modifications, amendments, restatements and replacements of any of the foregoing.

In addition to any other indebtedness and obligations described herein as secured by this Mortgage, this Mortgage secures any and all future advances, together with any interest thereon, which are made by Lender within twenty (20) years of the date hereof and prior to the release or satisfaction of this Mortgage, either pursuant to any Loan Document (defined herein) or at Lender's option, to

4859-3593-8599, v. 4

or for the benefit of Mortgagor up to a maximum principal amount outstanding at any point in time of One Million Two Hundred Thousand and 00/100 Dollars ($1,200,000.00), such maximum principal amount is stated herein for the purpose of any applicable future advance laws and is not deemed a commitment by Lender to make any future advances. It is the intention of Mortgagor and Lender that the lien of this Mortgage with respect to any future advances, modifications, extensions and renewals referred to herein shall have the same priority to which this Mortgage otherwise would be entitled as of the date this Mortgage is executed and recorded without regard to the fact that such future obligations, advances, modifications, extensions or renewals may occur after this Mortgage is executed.

2.     General Representations and Warranties.   Mortgagor covenants, warrants and represents that (a) Mortgagor is the owner in fee simple of the Premises, has full power to mortgage and assign the same, and is qualified to do business in the jurisdiction in which the Property is located, (b) Mortgagor is now the absolute owner of the Leases with full right and title to assign the Leases and the rents and income generated therefrom, (c) Mortgagor has good and valid title to the Chattels free and clear of all security interests and encumbrances and has full power to grant a security interest in the same, (d) the Premises: (i) are free and clear of any and all liens and encumbrances, except use restrictions of record, zoning ordinances, rights of way and easements of record, the rights of tenants now in possession, the lien of current taxes and assessments not delinquent or other subordinate liens approved in writing by Lender, (ii) are located on or adjacent to a public road with direct legal access to such road or with access via an irrevocable easement or irrevocable right of way permitting ingress and egress to/ from such road, (iii) is served by or has uninhibited access rights to public or private water and sewer (or well and septic) and all required utilities, all of which are appropriate for the current use of the Property, and (iv) constitutes one or more separate tax parcels which do not include any property which is not part of the Premises or is subject to an endorsement under the lender's policy of title insurance insuring the Premises as issued to Lender in connection with this Mortgage ("**Title Policy**"), or if an application has been or will be made to the applicable governing authority for creation of separate tax lots, Mortgagor shall deliver to lender an amount, to be held in escrow, that is sufficient to pay taxes for the existing tax parcel of which the Premises is a part until the separate lots are created, (e) this Mortgage creates a valid lien in favor of Lender on the Premises as provided for herein, (f) this Mortgage creates a valid assignment of the Leases, and rents and income therefrom, in favor of Lender as provided for herein, and (g) this Mortgage creates a valid security interest in favor of Lender in the Chattels as provided for herein. Mortgagor will make any further assurances of title that Lender may require and will warrant and defend the Property against all lawful claims and demands whatsoever. Mortgagor shall not acquire any Property covered by this Mortgage that is subject to any security interest or other charge or lien having priority over the lien or security interest granted under this Mortgage.   Mortgagor acknowledges and confirms that Lender is extending the indebtedness evidenced by the Note with the expectation that this Mortgage will be a lien upon the Property free and clear of any and all liens and encumbrances, except the lien of current taxes and assessments not delinquent or other subordinate liens approved in writing by Lender. Mortgagor further covenants, warrants and represents that as of the date hereof: (x) there is no proceeding pending or threatened for the total or partial condemnation of the Property that would have a material adverse effect on the value, use or operation of the Property; and (y) there is no pending, filed or threatened action, suit or proceeding, including without limitation, any federal or state bankruptcy. insolvency or similar proceeding, arbitration or governmental investigation involving any Mortgagor, guarantor, or Mortgagor's interest in the Property, an adverse outcome

of which would reasonably be expected to materially and adversely affect (i) such Mortgagor's title to the Property, (ii) the validity or enforceability of the Mortgage, (iii) such Mortgagor's ability to perform under the Loan, (iv) such guarantor's ability to perform under the related guaranty, (v) the principal benefit of the security interest intended to be provided herein, or (vi) the current principal use of the Property.

3. _Payment of Indebtedness and Observance of Covenants_. Mortgagor will pay the Note and all other indebtedness secured hereby in accordance with its terms and will perform and comply with all of the terms and provisions contained in the Note and in any other instrument or agreement given as security for the payment of or executed in connection with the Note.

4. _Due on Sale or Encumbrance_. In the event a Prohibited Transfer occurs (as that term is defined in the Loan Agreement) without the prior written approval of Lender being first obtained, whether such event is voluntary, involuntary or by operation of law, then in any such event, the whole of the indebtedness secured hereby shall, at the election of Lender at any time thereafter, become immediately due and payable, without notice or demand and any such event shall be deemed to be an Event of Default under this Mortgage. Consent as to any one Prohibited Transfer by Lender shall not be deemed to be a waiver of the right to require consent to future or successive transactions.

5. _Payment of Obligations_. Mortgagor will pay all sums which if not paid may result in the acquisition or creation of a lien prior to or of equal priority with or junior to the lien of this Mortgage, or which may result in conferring upon a tenant of any part of the Property a right to recover such sums as prepaid rent or as a credit or offset against any future rental obligation. Mortgagor shall pay all operating costs and expenses of the Property, shall keep the Property free from levy, attachment, mechanics', materialmens' and other liens, including without limitation, liens of any supplier, contractor, subcontractor, designer, engineer, architect, or vendor furnishing material or labor to any portion of the Property and shall pay when due all indebtedness which Lender may permit which may be secured by mortgage, lien or charge on the Property. Notwithstanding anything contained herein to the contrary, Mortgagor shall have the right to contest in good faith by appropriate legal or other proceedings the validity or amount of any lien, levy, or attachment imposed upon all or any portion of the Property, provided that (a) Mortgagor gives Lender prior written notice of its intent to contest the same, (b) if requested by Lender, Mortgagor demonstrates to the reasonable satisfaction of Lender that such legal or other proceedings shall operate to prevent the sale of the Property (or any portion thereof) to satisfy payment of the amount being contested prior to final determination of such proceedings, (c) Mortgagor causes the title insurance company insuring the lien of this Mortgage to provide to Lender such affirmative coverages and endorsements as Lender may require to insure the priority of the lien of this Mortgage over the lien of any such lien, levy, or attachment, and (d) if requested by Lender, Mortgagor provides a sufficient undertaking as may be required or permitted by law to accomplish the discharge or release of any such lien, levy, or attachment as to the Property. Furthermore, Mortgagor consents to the intervention by Lender in any such judicial proceeding if Lender determines such intervention is necessary or desirable to protect the interest of Lender. In such event, Mortgagor agrees to reimburse Lender upon demand for all reasonable attorneys' fees, costs and expenses incurred by Lender in connection with its intervention in such judicial proceeding. Any such contest shall be prosecuted with due diligence and Mortgagor shall promptly after final determination thereof pay the amount of any such lien, levy, or attachment so

determined, together with all interest and penalties which may be payable in connection therewith. Notwithstanding these provisions, Mortgagor shall (and if Mortgagor shall fail so to do, Lender may but shall not be required to) pay any such lien, levy, or attachment notwithstanding such contest if in the reasonable opinion of Lender, the Property shall be in jeopardy or in danger of being forfeited or foreclosed.

6. <u>Subrogation</u>. Lender is subrogated for further security to the lien, although released of record, of any and all encumbrances paid with the proceeds of the indebtedness secured by this Mortgage. Accordingly, this Mortgage shall be entitled to the lien and priority of any mortgage, deed of trust, lien or other encumbrance that is paid in full or in part with the proceeds of the indebtedness secured by this Mortgage.

7. <u>Security Interest</u>. This Mortgage shall also be considered a security agreement under the Uniform Commercial Code. For purposes of this Mortgage, all references to the **"Uniform Commercial Code"** shall be deemed to mean the Uniform Commercial Code, as amended, modified and/or recodified from time to time, in effect in the State whose laws govern and control the construction of the respective security interests granted under this Mortgage. Mortgagor grants and transfers to Lender a security interest in the Chattels and in all other portions of the Property to the full extent that such property and rights may be subject to the Uniform Commercial Code. Mortgagor hereby authorizes Lender to file with any public office or official (i) such financing statements covering the security interest of Lender in the Property and (ii) such amendment financing statements and correction statements relating to any financing statement covering the security interest of Lender in the Property, as Lender may deem necessary or advisable, at its reasonable discretion, to perfect its security interest. Such financing statements, amendment financing statements and correction statements may be unsigned or, if required to be signed by the applicable office with which Lender intends to file such financing statement, signed only by a representative of Lender. Mortgagor shall reimburse Lender upon demand for any filing fees, documentary stamp taxes, intangible taxes and similar taxes incurred by Lender in connection with the filing of financing statements, or any amendments, corrections or extensions relating thereto, and all such amounts shall be secured by this Mortgage. To the full extent Mortgagor may do so, Mortgagor agrees that Mortgagor will not at any time insist upon, plead, claim or take the benefit or advantage of any law now or hereafter in force providing for any damages, penalty or fee against Lender for failure to furnish Mortgagor with any financing statement filed by Lender which relates to the Property. Mortgagor, to the extent permitted by law, hereby waives and releases all rights to collect or receive any damages, penalty or fee from Lender for failure to furnish Mortgagor with any financing statement filed by Lender which relates to the Property. Upon an Event of Default hereunder, Lender, at its option and without notice or demand, shall be entitled to enter upon the Premises to take immediate possession of the Chattels or to render the same unusable. Upon request, Mortgagor shall assemble and make the Chattels available to Lender at a place to be designated by Lender which is reasonably convenient to both parties. Upon repossession, Lender may propose to retain the Chattels in partial satisfaction of the indebtedness of Mortgagor secured hereby or sell all or any portion of the Chattels at public or private sale in accordance with the Uniform Commercial Code. In the further event that Lender shall dispose of any or all of the Chattels after an Event of Default, the proceeds of disposition shall be first applied in the following order: (a) to the reasonable expenses of retaking, holding, preparing for sale, selling and the like, (b) to the reasonable attorneys' fees and legal expenses incurred by Lender, and (c) to the satisfaction of the indebtedness secured hereby. Mortgagor agrees to release and

hold harmless Lender from any and all claims arising out of the repossession of the Chattels. In the event of a proposed sale of all or any part of the Chattels, notification shall be given to Mortgagor at least ten (10) days prior thereto. From time to time upon the request of Lender, Mortgagor shall furnish to Lender a current detailed written list of all of the Chattels. Mortgagor shall give prior written notice to Lender of any transfer, sale, pledge, encumbrance, assignment or any other process or action taken or pending, voluntary or involuntary, whereby a third party is to obtain or is attempting to obtain possession of or any interest in any of the Chattels, except in connection with the sale of inventory in the ordinary course of business or disposal of any obsolete equipment for fair market value. To the extent that the Uniform Commercial Code does not apply to any item of the Chattels, it is the intention of this Mortgage that Lender have a common law pledge and/or collateral assignment of such item of Chattels.

8.  State of Organization. Mortgagor covenants and warrants to Lender that: (i) Mortgagor is a limited liability company duly organized in the State of Florida, (ii) Mortgagor shall continue to maintain its existence in good standing under the laws of the state of its incorporation or organization, as the case may be, at all times, (iii) Mortgagor's legal name as shown on the records of the Secretary of State in which Mortgagor is organized is Miracle Hill Nursing and Rehabilitation Center, Inc., and such legal name is correctly reflected in the records of the State of Florida, (iv) Mortgagor shall not change its legal name without providing Lender with not less than sixty (60) days prior written notice, (v) Mortgagor shall not voluntarily or involuntarily dissolve, cancel or terminate its legal existence or change the state of its incorporation or organization, as the case may be. Mortgagor shall maintain all of Mortgagor's records regarding the Chattels at such chief executive office or residence.

9.  Continuing Lien. This Mortgage creates a continuing lien to secure the full and final payment of the Note and the performance of the other obligations of Mortgagor under this Mortgage or under any other security documents or agreements executed by Mortgagor in connection with the indebtedness secured hereby.

10.  Successors. In the event the ownership of the Property, or any part thereof, becomes vested in a person or persons other than Mortgagor, and Lender does not exercise the option reserved to it hereunder to accelerate the indebtedness secured hereby in the event of alienation of all or any part of the Property, Lender may deal with successor or successors in interest with reference to this Mortgage and the indebtedness secured hereby in the same manner as with Mortgagor, without in any manner vitiating or discharging Mortgagor's liability hereunder, or upon the indebtedness hereby secured.

11.  Events of Default. The occurrence of an "Event of Default" under the Note shall constitute an event of default under this Mortgage and each such occurrence is herein referred to as an **"Event of Default"**. Accordingly, the provisions of the Loan Agreement are by reference incorporated herein and made a part hereof. For purposes of clarification, an "Event of Default" under the Note shall mean the occurrence of any event or circumstance that would constitute an "Event of Default" as that term is defined in the Note.

12.  Specific Remedies. Upon the occurrence of an Event of Default, in addition to all other rights and remedies available to Lender at law or in equity, Lender shall be entitled to exercise any and all of the rights and remedies under the Note.

4859-3593-8599, v. 4

13. <u>Fees and Costs</u>. Mortgagor shall pay to Lender, or its legal representatives, successors and assigns, the costs and expenses, including but not limited to attorneys' fees and legal expenses, incurred by Lender in connection with (i) the exercise of any right or remedy available to it under this Mortgage, whether or not suit is commenced, (ii) the enforcement of any provision contained in this Mortgage, (iii) the collection of any indebtedness or obligations secured hereby, and (iv) any bankruptcy, reorganization, receivership or other proceeding affecting creditor's rights and involving a claim under this Mortgage or any document executed in connection herewith, which fees and costs shall be an additional lien and security interest against the Property and shall be secured hereby. In addition, Mortgagor shall pay to Lender, or its legal representatives, successors and assigns, attorneys' fees, any sums expended for obtaining title reports for the Premises, for title searches, or for title insurance, and all other costs incurred in any action to foreclose this Mortgage, or for the cure of an Event of Default, which fees and costs shall be an additional lien and security interest against the Property and shall be secured hereby. Notwithstanding anything contained herein to the contrary, any provision contained herein requiring the reimbursement of attorney's fees incurred by Lender shall be deemed to be limited to reasonable attorneys' fees incurred by Lender, provided however, there shall be a rebuttable presumption that any such attorneys' fees incurred by Lender are reasonable in nature and amount.

14. <u>Rights Cumulative</u>. In addition to the rights, powers and remedies herein expressly conferred upon Lender, Lender shall be entitled to exercise all rights, powers and remedies available to Lender by law or at equity. Each right, power or remedy herein expressly conferred upon Lender is cumulative and in addition to every other right, power or remedy, express or implied, now or hereafter arising, available to Lender, at law or in equity, or under any other agreement, and each and every right, power and remedy herein set forth or otherwise so existing may be exercised from time to time as often and in such order as may be deemed expedient by Lender and shall not be a waiver of the right to exercise at any time thereafter any other right, power or remedy.

15. <u>Compliance with Mortgage Foreclosure Law</u>. Where any provision of this Mortgage or the other Loan Documents is inconsistent with any provision of the laws of the State in which the Premises are located regulating the creation, perfection, enforcement or priority of a lien or security interest in real or personal property (such laws as amended, modified and/or recodified from time to time, are collectively referred to herein as the "**Applicable Law**"), the provisions of the Applicable Law shall take precedence over the provisions of this Mortgage, but shall not invalidate or render unenforceable any other provisions of this Mortgage that can be construed in a manner consistent with the Applicable Law. Conversely, if any provision of this Mortgage shall grant to Lender any rights or remedies upon an Event of Default which is more limited than the rights that would otherwise be vested in Lender under the Applicable Law in the absence of said provision, Lender shall be vested with the rights granted under the Applicable Law to the fullest extent not prohibited by the Applicable Law. If any provision of this Mortgage shall grant to Lender (including Lender acting as a mortgagee-in-possession) or a receiver appointed pursuant to the provisions of this Mortgage or any of the other Loan Documents any powers, rights or remedies prior to, upon or following the occurrence of an Event of Default which are more limited than the powers, rights or remedies that would otherwise be vested in Lender or in such receiver under the Applicable Law in the absence of said provision, Lender and such receiver shall be vested with the powers, rights and remedies granted under the Applicable Law to the full extent permitted by law.

4859-3593-8599, v. 4

16.  <u>Exercise of Rights</u>.  No failure by Lender in the exercise of any of its rights under this Mortgage shall preclude Lender from the exercise thereof in the event of any subsequent Event of Default, and no delay by Lender in the exercise of its rights under this Mortgage shall preclude Lender from the exercise thereof so long as an Event of Default exists.  Lender may enforce any one or more of its rights or remedies hereunder successively or concurrently.

17.  <u>Additional Assurances</u>.  Mortgagor agrees upon the request by Lender to execute and deliver such further instruments, deeds and assurances including financing statements under the Uniform Commercial Code and will do such further acts as may be necessary or proper to carry out more effectively the purposes of this Mortgage and without limiting the foregoing, to make subject to the lien hereof any property agreed to be subjected hereto or covered by the granting clause hereof, or intended so to be.  Mortgagor agrees to pay any recording fees, filing fees, note taxes, mortgage registry taxes or other charges arising out of or incident to the filing or recording of this Mortgage and such further assurances and instruments.

18.  <u>Extension of Time and Other Acts of Lender</u>.  Lender, at its option, may (i) extend the time for the payment of the indebtedness secured hereby, (ii) reduce the payments thereon, (iii) accept a renewal note or notes therefore, (iv) grant any release, with or without consideration, of the whole or any part of the security for the payment of the indebtedness secured hereby or the release of any person, party or entity liable for payment of said indebtedness, or (v) amend or modify in any respect any of the terms and provisions hereof, of this Mortgage, the Note (including substitution of another note) or of any other Loan Documents (as defined herein), without the consent of any endorser or guarantor and without the consent of Mortgagor if Mortgagor has conveyed title to any of the Property, and any such extension, reduction or renewal shall not affect the priority of this Mortgage or impair the security hereof in any manner whatsoever, or release, discharge or affect in any manner the primary liability of Mortgagor or any endorser or guarantor to Lender.

19.  <u>Partial Release and Additional Security</u>.  Any part of the Property covered by this Mortgage may be released by Lender without affecting the lien and security interest hereby granted as to the remainder, and the security of this Mortgage shall not affect or be affected by any other security for the indebtedness secured hereby nor shall the taking of additional security release or impair the security hereof or liability for the indebtedness secured hereby in any manner whatsoever.

20.  <u>Waiver of Certain Rights by Mortgagor</u>.  Mortgagor for Mortgagor and Mortgagor's heirs, devisees, representatives, successors and assigns, and for any and all persons ever claiming any interest in the Property through Mortgagor, hereby waives, releases and relinquishes, to the full extent permitted by law, each of the following:

a.  any right or claim of right to cause a marshalling of Mortgagor's assets or to cause Lender to proceed against any of the security for the indebtedness secured hereby before proceeding under this Mortgage against Mortgagor and Mortgagor hereby agrees that any court having jurisdiction to foreclose the lien of this Mortgage may order the Premises sold as an entirety;

b.     the benefit of all laws now or hereafter existing providing for any appraisement before sale of any portion of the Property;

c.     the benefit of all laws now or hereafter existing providing for the extension of time for the enforcement of the collection of the Note or the debt evidenced thereby or creating or extending a period of redemption from any sale made in collecting said debt;

d.     all rights of redemption, reinstatement, valuation, appraisement, stay of execution and notice of election to mature or declare due the whole of the indebtedness secured hereby in the event of foreclosure of this Mortgage; and

e.     all rights of dower, curtesy, and homestead in and to the Premises.

All principal, interest and other amounts secured by this Mortgage shall be payable without relief from valuation and appraisement laws. To the full extent Mortgagor may do so, Mortgagor agrees that Mortgagor will not at any time insist upon, plead, claim or take the benefit or advantage of any law now or hereafter in force providing for any appraisement, valuation, stay, extension or redemption. Mortgagor agrees that any payments required to be made hereunder shall become due on demand and Mortgagor expressly waives and relinquishes all rights and remedies (including any rights of subrogation) accorded by applicable law to indemnitors or guarantors.

21.     <u>Waiver of Right to Trial by Jury</u>. **Mortgagor hereby agrees that any suit, action or proceeding, whether a claim or counterclaim, brought or instituted by any party on or with respect to this Mortgage or any other document executed in connection herewith or which in any way relates, directly or indirectly to any of the Loan Documents or any event, transaction or occurrence arising out of or in any way connected with this Mortgage or the dealings of the parties with respect thereto, shall be tried only by a court and not by a jury. MORTGAGOR, AND LENDER BY ACCEPTANCE HEREOF, HEREBY EXPRESSLY WAIVE ANY RIGHT TO A TRIAL BY JURY IN ANY SUCH SUIT, ACTION OR PROCEEDING.** Mortgagor acknowledges that Mortgagor may have a right to a trial by jury in any such suit, action or proceeding and that Mortgagor hereby is knowingly, intentionally and voluntarily waiving any such right. Mortgagor further acknowledges and agrees that this paragraph is material to this Mortgage and that adequate consideration has been given by Lender and received by Mortgagor in exchange for the waiver made by Mortgagor pursuant to this paragraph.

22.     <u>Successors and Assigns</u>. The covenants, conditions and agreements contained in this Mortgage shall bind, and the benefits thereof shall inure to, Mortgagor and Lender, their respective successors, assigns, heirs and legal representatives. No assignment or alienation by Mortgagor of any of its rights or obligations under this Mortgage shall be effective without the prior written consent of Lender and any fees which are payable in connection with such transfer have been paid in full, and any party who takes any rights or obligations of Mortgagor under this Mortgage by assignment, alienation or otherwise shall assume all of the rights and obligations of Mortgagor the same as if such party were an original party to this Mortgage. Lender may assign this Mortgage to any third-party without the prior consent of Mortgagor, and all rights of Lender in, to and under this Mortgage shall pass to, and may be exercised by, any assignee of such rights of Lender. Mortgagor hereby agrees that if Lender gives notice to Mortgagor of an assignment of

said rights, upon such notice the liability of Mortgagor to the assignee of Lender shall be immediate and absolute. Mortgagor will not set up any claim against Lender or any intervening assignee as a defense, counterclaim or setoff to any action brought by Lender or any intervening assignee for any amounts due hereunder or for possession of or the exercise of rights with respect to the Premises or any income derived from the Premises.

23.     Release of Mortgage.  Lender shall release this Mortgage of record upon the satisfaction in full of each of the following conditions: (i) all agreements and obligations of Lender to make any loan or advance any credit to Mortgagor have been terminated and (ii) all indebtedness and obligations secured hereby have been paid and performed in full, including without limitation the indebtedness and obligations evidenced by the Note.

24.     Notices.  Any written notice required or permitted to be given to Lender or to Mortgagor hereunder shall be deemed effective when given in the manner as provided for in the Loan Agreement for the sending of notices to Lender and to Mortgagor.

25.     Invalidity of Any Provision.  It is the intent of this Mortgage to confer to Lender the rights and benefits hereunder to the full extent allowable by law.  If any provision (or a portion thereof) of this Mortgage or of any other document executed in connection herewith is held invalid or unenforceable or the application thereof to any person or circumstance shall to any extent be invalid or unenforceable (each such provision, or applicable portion thereof, is herein referred to as an **"Invalid Provision"**), then (i) the remainder of this Mortgage, or the application of such Invalid Provision to any other person or circumstance, shall be valid and enforceable to the fullest extent permitted by law, (ii) the Invalid Provision shall be deemed to be severable in such instance, and (iii) Mortgagor and Lender shall negotiate an equitable adjustment in the provisions of the same in order to effect, to the maximum extent permitted by law, the purpose of this Mortgage.

26.     **Submission to Jurisdiction.  Mortgagor acknowledges that the office of Lender from which the loan evidenced by the Note is being originated is located in Tallahassee, Florida and that Lender may be irreparably harmed if required to institute or defend any action in any jurisdiction other than a local, state or federal court located within Florida. Therefore, Mortgagor irrevocably agrees that any suit, action or other legal proceeding arising directly, indirectly or otherwise in connection with, out of, related to or from the Note, this Mortgage or any of the other Loan Documents may be brought in either (i) a court located within Illinois or (ii) a court located within the State in which the Premises are located. Furthermore, Mortgagor irrevocably (i) consents and submits to the jurisdiction of any local, state or federal court located within Illinois and within the State in which the Premises are located, (ii) waives any objection which Mortgagor may have to the laying of venue in any suit, action or proceeding in any such courts, and (iii) waives any claim that any such suit, action or proceeding has been brought in an inconvenient forum. Notwithstanding anything contained in this paragraph to the contrary, Lender shall have the right to commence and litigate any suit, action or proceeding against Mortgagor or any property of Mortgagor in any court of any other appropriate jurisdiction. Nothing herein shall be deemed to limit any rights, powers or privileges which Lender may have pursuant to any law of the United States of America or any rule, regulation or order of any department or agency thereof and nothing herein shall be deemed to make unlawful any transaction or conduct by Lender which is lawful pursuant to, or which is permitted by, any of the foregoing.**

27. <u>Governing Law</u>. To the fullest extent permitted by any applicable law, this Mortgage shall be governed by and construed in accordance with the laws of the State of Florida, notwithstanding that Illinois conflicts of law rules might otherwise require the substantive rules of law of another jurisdiction to apply. Notwithstanding anything expressed or implied herein to the contrary, the laws of Florida shall be deemed to govern and control with respect to (i) the creation, perfection, enforcement or priority of a lien or security interest in the Premises, in the Leases, in that portion of the other Property that is located within Florida, and in any other property of Mortgagor that is located within Florida granted, assigned or conveyed by this Mortgage, (ii) the perfection, or the effect of perfection or non-perfection, of the security interests granted by this Mortgage in any of the Property that is located within Florida, (iii) the availability of, and procedures relating to, any remedy hereunder or related to this Mortgage, and (iv) any other provision of this Mortgage to the extent that application of the laws of Florida are needed in order to obtain the practical realization of the principal benefits and/or security intended to be provided by this Mortgage. Provided, however, if by reason of mandatory provisions of law, the perfection, the effect of perfection or nonperfection, and the priority of a security interest in any personal property are governed by the Uniform Commercial Code in effect in a jurisdiction other than Illinois or Florida, then such other jurisdiction shall govern and control the provisions hereof relating to perfection, effect of perfection or non-perfection, and the priority of the security interests in any such personal property.

28. <u>USA Patriot Act Notice: Compliance</u>. The USA Patriot Act of 2001 (Public Law 107-56), as amended from time to time and any successor statute (herein, the **"PATRIOT Act"**), and federal regulations issued with respect thereto require all financial institutions to obtain, verify and record certain information that identifies each individual or business entity which opens an "account" or establishes a relationship with such financial institution. Consequently, Lender may from time-to-time request, and Mortgagor shall provide to Lender, (i) Mortgagor's name, address, tax identification number, date of birth, and other information that will allow Lender to identify Mortgagor, (ii) the name, address, tax identification number, date of birth, and other information that will allow Lender to identify each guarantor of the indebtedness secured hereby, (iii) the name, address, tax identification number, and other information that will allow Lender to identify each officer, partner, member, shareholder or other stakeholder of Mortgagor, and/or (iv) such other identification information as shall be necessary for Lender to comply with federal law. Mortgagor shall provide such information and take such actions as are reasonably requested by Lender in order to assist Lender in maintaining compliance with the PATRIOT Act. An "account" for this purpose may include, without limitation, a deposit account, cash management service, a transaction or asset account, a credit account, a loan or other extension of credit, and/or other financial services product.

29. <u>Authorization to Complete Blanks and Conform to Recording Requirements</u>. In the event Mortgagor executes and delivers this Mortgage or any other Loan Documents to Lender with any blank incomplete, Mortgagor authorizes Lender, and its agents, to complete any such open blanks, including without limitation any blanks relating to the effective date of any such Loan Documents, the maturity date of the Note, the address of any party to the Loan Document or the effective date of any other document referenced herein or therein. Mortgagor authorizes Lender, and its agents, to unilaterally make any modifications, adjustments or amendments necessary or appropriate to conform this Mortgage to the requirements for the county recorder in the State where the Premises are located in order to render it in a form acceptable for recording.

30.    <u>Interpretation</u>.  The captions or headings herein have been inserted solely for the convenience of reference and in no way define or limit the scope, intent or substance of any provision of this Mortgage.  Whenever the content requires or permits the singular shall include the plural, the plural shall include the singular and the masculine, feminine and neuter shall be freely interchangeable.  This Mortgage shall be construed without regard to any presumption or other rule requiring construction against the party or parties causing this Mortgage to be drafted.  If used herein, the term "gross negligence" shall be deemed to mean a conscious, voluntary act or omission in reckless disregard of a legal duty and of the consequences as affecting any other party to this Mortgage and the Property.

[the remainder of this page is intentionally left blank,
see the following page for signature of Mortgagor]

## SIGNATURE PAGE FOR MORTGAGOR TO REAL ESTATE MORTGAGE, SECURITY AGREEMENT AND ASSIGNMENT OF LEASES AND FIXTURE FILING

IN WITNESS WHEREOF, Mortgagor has caused this Mortgage to be executed and delivered effective as of the date first above written.

**MORTGAGOR:**

**MIRACLE HILL NURSING AND REHABILITATION CENTER, INC.,**
a Florida Not For Profit Corporation

By: _Willie J Williams_

_James Griffin_
Witness #1

_JAMES GRIFFEN_
Printed Name of Witness #1

_C WMS_
Witness #2

_Cedric Williams_
Printed Name of Witness #2

The foregoing instrument was acknowledged before me by means of physical presence or online notarization, this __16__ day of __July__, 2022, by _Willie Williams_, as _____ for _____, a _____ corporation, who is personally known to me or has produced _DL-FL N 452-89-55-441-0_ as identification.

_Celiv Rivera_
NOTARY PUBLIC, State of _Florida_
Print name: _Celiv Rivera_
My commission expires: _1/3/26_



CELIVI RIVERA
Notary Public
State of Florida
Comm# HH212928
Expires 1/3/2026

## EXHIBIT "A"

## LEGAL DESCRIPTION

EXHIBIT A

LEGAL DESCRIPTION

Commence at the Southwest corner of Mickler's Subdivision, a subdivision as per map or plat thereof recorded in Deed Book "HH", Page 590 of the Public Records of Leon County, Florida, said point also marking the intersections of the northerly right-of-way boundary of Alabama Street and the Easterly right-of-way boundary of Abraham Street, thence run North 89 degrees 51 minutes 59 seconds East along said Northerly right-of-way boundary 339.94 feet, thence run North 210.00 feet to POINT OF BEGINNING. From said POINT OF BEGINNING continue North 313.43 feet, thence run South 89 degrees 40 minutes 25 seconds East 291.38 feet, thence run South 521.09 feet to the Northerly right-of-way boundary of said Alabama Street, thence run South 89 degrees 51 minutes 59 seconds West along said Northerly right-of-way boundary 89.37 feet, thence run North 209.53 feet, thence run West 202.00 feet to the POINT OF BEGINNING, containing 2.52ACRES, more less. Situate, lying and being in Section 26, Township 1 North, Range 1 West, Leon Count, Florida.

Commence at the Southwest corner of Mickler's Subdivision, a subdivision as per map or plat thereof recorded in Deed Book "HH," Page 590 of the Public Records of Leon County, Florida, said point also marking the intersection of the Northerly right-of-way boundary of Alabama Street and the Easterly right-of-way boundary of Abraham Street thence run north 89 degrees 51 minutes 59 seconds East along said Northerly right-of-way boundary 339.94 feet to POINT OF BEGINNING. From said POINT OF BEGINNING thence run North 210.00 feet, thence run East 202.00 feet, thence run South 209.53 feet to the Northerly right-of-way boundary of said Alabama Street, thence run; South 89 degrees 51 minutes 59 seconds West along said Northerly right-of-way boundary 202.00 feet to the POINT OF BEGINNING, containing 0.97 of an acre, more or less. Situate, lying and being, in Section 26, Township 1 North, Range 1 West, Leon County, Florida, being the same property as that described in Official Record Book 1574, Page 1489 and 1490 of the Public Records of Leon County, Florida.

Begin at the Southwest corner of Mickler's Subdivision, a subdivision as per map or plat thereof recorded in Deed Book "HH," Page 590 of the Public Records of Leon County, Florida, said point also marking the intersection of the Northerly right-of-way boundary of Alabama Street and the Easterly right-of-way boundary of Abraham Street, thence run North 89 degrees 51 minutes 59 seconds East along said Northerly right -of-way boundary 339.94 feet, thence run North 113.54 feet to a concrete monument. thence run South 89 degrees 51 minutes 59 seconds West 339.94 feet to a concrete monument on the Easterly right-of-way boundary of said Abraham Street, thence run South along said Easterly right-of-way boundary 113.54 feet to the POINT OF BEGINNING, containing 0.89 of an acre, more or less. Situate, lying and being Section 26,Township 1 North, Range 1 West, Leon County, Florida.

# EXHIBIT "C"

**GUARANTY AND MEMBERSHIP INTEREST PLEDGE AGREEMENT**

THIS GUARANTY AND MEMBERSHIP INTEREST PLEDGE AGREEMENT (this "*Agreement*") is made and entered into as of the 20th day of July, 2022, by Florida State Primitive Baptist Convention, Inc., a Florida Not For Profit Corporation ("*Pledgor*"), and 1329 Abraham Street Holdings LLC, a Delaware limited liability company (the "*Pledgee*").

WHEREAS, Pledgor owns 100% of the membership interests in Miracle Hill Nursing and Rehabilitation Center, Inc. (the "*Company*");

WHEREAS, Pledgee has loaned the Companies an amount up to $600,000.00 (the "*Loan*") pursuant to that certain Promissory Note of even date herewith (the "*Note*"); and

WHEREAS, Pledgor guarantees the obligations of the Loan and certain membership interests in the Company held by Pledgor is to be pledged as collateral to secure the Note.

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Pledgor and Pledgee, each intending to be bound legally, agree as follows:

1. <u>Guaranty; Pledge of Membership Interests.</u>

    a. Pledgor unconditionally and absolutely guarantees (i) the due and punctual payment and performance when due of all amounts due under the Note (the "*Obligations*") and any and all other monies and amounts due or which may become due on or with respect to any of the foregoing, and the due and punctual performance and observance by the Company under the Note, in any case whether according to the present terms thereof, at any earlier or accelerated date or dates or pursuant to any extension of time or to any change in the terms, covenants, agreements and conditions thereof now or at any time hereafter made or granted, and (ii) all costs, expenses and liabilities (including, without limitation, reasonable attorneys' fees and expenses, documentation and diligence fees and legal expenses, and search, audit, recording, professional and filing fees and expenses) that may be incurred or advanced by Lender in any way in connection with the foregoing and/or otherwise required to be paid by Borrowers under the Note (collectively, such items in clauses (i) through (ii) being the "*Guaranteed Obligations*"). Guarantor acknowledges that this Agreement shall be deemed a continuing guaranty of the Guaranteed Obligations, and is a guaranty of payment and not a guaranty of collection.

    b. Pledgor hereby pledges to Pledgee, and grants to Pledgee a continuing first priority security interest in the membership interests of the Company, (the "*Membership Interests*"), together with (a) all distributions, interest, proceeds, and any other sums due or to become due thereon, (b) all instruments or other property at any time and from time to time received,

receivable, or otherwise distributed in respect of (as distributions, reclassification, readjustment, or other changes in the equity of the issuer of such Membership Interests, or otherwise), or in exchange for any or all of such Membership Interests, (c) all general intangibles associated therewith, and (d) all proceeds thereof (collectively, including the Membership Interests, the "*Collateral*") as security for the payment and performance of the Guaranteed Obligations. Whether or not Collateral is evidenced by certificates, the Pledgor shall permit the Pledgee to file a UCC Financing Statement naming the Pledgor as debtor and the Pledgee as secured party with respect to the Collateral in any jurisdiction reasonably required by the Pledgee, in form and substance satisfactory to the Pledgee in its sole and absolute determination, and without the requirement of the Pledgor's signature.

c.      The Membership Interests shall terminate upon the payment in full of the Guaranteed Obligations.  Upon such occurrence, the Membership Interests shall revest back to the Pledgor, and the Collateral shall be released back to the Pledgor.

2.      <u>Membership Interest Distributions, Reclassifications, etc</u>.  If (a) any membership distribution, reclassification, readjustment, or other change is made or declared in the capital structure of the Company, or (b) newly substituted and additional membership interests are issued by reason of any such change that either reclassifies or increases the amount of the Membership Interests, then any such amounts shall be assigned and delivered by each Pledgor to Pledgee and held by Pledgee under the terms hereof.

3.      <u>Cooperation</u>. Each Pledgor agrees to cooperate with Pledgee and will execute and deliver all stock powers, proxies, instruments, and documents as Pledgee may reasonably request from time-to-time in order to carry out the provisions hereof.

4.      <u>Representations, Warranties, and Covenants of Pledgor</u>. Pledgor represents, warrants, and covenants to Pledgee that:    (a) Pledgor has good and unencumbered title to the Membership Interests that it is pledging hereunder, free and clear of all claims, pledges, liens, security interests, and other encumbrances of every nature whatsoever, except the pledge granted to Pledgee hereunder; (b) the Membership Interests being pledged by such Pledgor hereunder is duly and validly pledged with Pledgee in accordance with law; (c) such Pledgor will defend Pledgee's right and security interest in and to the Collateral that such Pledgor is pledging hereunder against the claims and demands of all persons whomsoever, subject to any claim that may be made by the Company's' direct lenders that the granting and/or exercise of this Agreement triggers a default under the loan made by such lender; (d) such Pledgor will not sell, convey, or otherwise dispose of any of the Collateral that it is pledging hereunder, nor will it create, incur, or permit to exist any pledge, mortgage, lien, charge, encumbrance, or any security interest whatsoever with respect to any of such  Collateral or the proceeds thereof; (e) such Pledgor has full power and authority to execute, deliver, and perform the obligations under this Agreement, and to pledge, assign, and grant a security interest in all of the Collateral that it is pledging pursuant to this Agreement; (f) no consent or approval or the

4894-0121-0407, v. 6

taking of any other action in respect of any public authority is required as a condition to the validity or enforceability of this Agreement; (g) the Membership Interests being pledged by such Pledgor hereunder has been duly and validly issued and is fully paid and nonassessable; and (h) there are no restrictions upon the voting rights or the transfer of the Membership Interests being pledged by such Pledgor hereunder, except as set forth in the applicable Articles of Organization and Operating Agreement of the applicable Company (collectively, the "***Organization Documents***").

5.  <u>Power of Attorney</u>. Each Pledgor hereby irrevocably grants Pledgee a power of attorney, coupled with an interest, with respect to the Collateral that such Pledgor is Pledging hereunder for all purposes consistent with this Agreement. Said power of attorney shall include, but shall not be limited to, the power to transfer the such Collateral, to execute in such Pledgor's name instruments of conveyance or transfer with respect to all or any of such Collateral and to take such other action to enforce any of Pledgee's rights hereunder or with respect to any of such Collateral.

6.  <u>Voting and Dividend Rights; Default; Termination</u>. Unless and until any Pledgor shall be in default under this Agreement or with respect to the Guaranteed Obligations, each Pledgor shall have all voting and distribution rights, if any, in the applicable Membership Interests that Pledgor is pledging hereunder. In the event of a default under this Agreement, or in the payment or performance of any of the Guaranteed Obligations within ten (10) days of when due (and of the foregoing, a "***Default***"), Pledgee at any time and from time to time thereafter: (a) may declare that the ownership of the Membership Interests shall be immediately vested in Pledgee and may cause any or all of the Membership Interests to be registered in its own name or in the name of any nominee or nominees; (b) shall be entitled to collect and receive all distributions and other payments of any character, declared or paid on any of the Membership Interests; (c) may vote any or all interests of any of the Membership Interests and give all consents, waivers, and ratifications in respect thereof and otherwise act with respect thereto as though it was the absolute owner thereof, to extent allowed under applicable law; and (d) may sell, assign, transfer, and deliver at any time the Membership Interests or any rights or interests therein pursuant to the terms, conditions and restrictions set forth in the applicable Organization Documents. In the event the Guaranteed Obligations are paid in full, Pledgee shall relinquish its Membership Interests and immediately transfer the Collateral back to Pledgee.

7.  <u>Miscellaneous</u>.

a.  <u>Governing Law</u>. This Agreement shall be governed by and construed according to the internal laws of the State of Florida.

b.  <u>Entire Agreement</u>. This Agreement, together with the Note, sets forth the entire agreement and understanding of the parties with respect to the subject matter hereof, supersedes and rescinds any prior agreements relating to the subject matter hereof, and shall not be subject to any change or modification except by the execution of a written instrument subscribed to by the parties hereto.

4894-0121-0407, v. 6

c.     Waiver; Remedies.  No course of dealing between any Pledgor and Pledgee nor any failure to exercise, nor any delay in exercising, on the part of Pledgee, any right, power, or privilege hereunder or under any of the Guaranteed Obligations, shall operate as a waiver thereof; nor shall any single or partial exercise of any right, power, or privilege hereunder or thereunder preclude any other or further exercise thereof or the exercise of any other right, power, or privilege.  The rights and remedies herein provided and provided under any of the Guaranteed Obligations are cumulative and are in addition to, and not exclusive of, any rights or remedies provided by law, including, without limitation, the rights and remedies of a secured party under the applicable version of the Uniform Commercial Code governing each pledge of Collateral hereunder in force on the date hereof and as may be amended from time to time.

d.     Notice. Notice to or demand upon Pledgor or Pledgee shall be deemed to have been sufficiently given or served for all purposes thereof when delivered to an overnight mail or messenger service or deposited in the mails, first class, postage prepaid, registered or certified, return receipt requested, to the address stated beneath their respective signatures below, or to such other address as the party to whom such notice is directed may have designated by written notice similarly given to the other party hereto.

e.     Assignment; Binding Nature.   This Agreement may not be assigned by either party without the written consent of the other.  This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective authorized successors and assigns.

[Signature Page Follows]

4894-0121-0407, v. 6

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be executed and delivered as of the first date written above.

**PLEDGOR:**

**FLORIDA STATE PRIMITIVE BAPTIST CONVENTION, INC.,**
a Florida Not For Profit Corporation

By: *Willie J Williams*
Name: Willie J. Williams
Its: President

**PLEDGEE:**

**1329 ABRAHAM STREET HOLDINGS LLC,**
a Delaware limited liability company

By: *Willie J Williams*
Name: Willie J. Williams
Its: President

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be executed and delivered as of the first date written above.

**PLEDGOR:**

**FLORIDA STATE PRIMITIVE BAPTIST
CONVENTION, INC.,**
 a Florida Not For Profit Corporation


By: _____
Name: _____
Its: _____




**PLEDGEE:**

**1329 ABRAHAM STREET HOLDINGS LLC,**
 a Delaware limited liability company


By: *Effie Belhassen*
Name: Effie Efrat Belhassen
Its: Authorized Representative

# EXHIBIT "D"

**FINANCING STATEMENT FORM**

A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON

MONICA PLATT; 8475582335

Email MPLATT@GUTNICKI.COM

B. SEND ACKNOWLEDGEMENT TO:

**FILED**

2022 Jul 26 03:13 PM

****** 202202417261 ******

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (1a OR 1b) - Do Not Abbreviate or Combine Names

1a. ORGANIZATION'S NAME

FLORIDA STATE PRIMITIVE BAPTIST CONVENTION, INC.

| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

| 1c. MAILING ADDRESS Line One | | | | | |
|---|---|---|---|---|---|
| 1015 ALABAMA STREET | This space not available. | | | | |
| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY | |
| | TALLAHASSEE | FL | 32304 | US | |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (2a OR 2b) - Do Not Abbreviate or Combine Names

2a. ORGANIZATION'S NAME

| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

| 2c. MAILING ADDRESS Line One | | | | | |
|---|---|---|---|---|---|
| | This space not available. | | | | |
| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY | |

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - INSERT ONLY ONE SECURED PARTY NAME (3a OR 3b)

3a. ORGANIZATION'S NAME

1329 ABRAHAM STREET HOLDINGS LLC

| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

| 3c. MAILING ADDRESS Line One | | | | | |
|---|---|---|---|---|---|
| 8301 ROOSEVELT BLVD. | This space not available. | | | | |
| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY | |
| | PHILADELPHIA | PA | 19152 | US | |

**4. This FINANCING STATEMENT covers the following collateral:**

Debtor grants to Secured Party a continuing first priority security interest in the membership interests of Miracle Hill Nursing and Rehabilitation Center, Inc., a Florida limited liability company (the "Membership Interests"), together with (a) all distributions, interest, proceeds, and any other sums due or to become due thereon, (b) all instruments or other property at any time and from time to time received, receivable, or otherwise distributed in respect of (as distributions, reclassification, readjustment, or other changes in the equity of the issuer of such Membership Interests, or otherwise), or in exchange for any or all of such Membership Interests, (c) all general intangibles associated therewith, and (d) all proceeds thereof (collectively, including the Membership Interests, the "Collateral") as security for the payment and performance of certain guaranteed obligations.

| **5. ALTERNATE DESIGNATION** (if applicable) | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR |
|---|---|---|---|
| | ☐ AG LIEN | ☐ NON-UCC FILING | ☐ SELLER/BUYER |

**6. Florida DOCUMENTARY STAMP TAX** - YOU ARE REQUIRED TO CHECK **EXACTLY ONE** BOX

☐ All documentary stamps due and payable or to become due and payable pursuant to s. 201.22 F.S., have been paid.

☑ Florida Documentary Stamp Tax is not required.

**7. OPTIONAL FILER REFERENCE DATA**   Florida Secretary of State

STANDARD FORM - FORM UCC-1 (REV.05/2013)   Filing Office Copy   Approved by the Secretary of State, State of Florida

FINANCING STATEMENT FORM

A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON

MONICA PLATT; 8475582335

Email MPLATT@GUTNICKI.COM

B. SEND ACKNOWLEDGEMENT TO:

# FILED

2022 Jul 26 03:13 PM

\*\*\*\*\*\* 202202417170 \*\*\*\*\*\*

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (1a OR 1b) - Do Not Abbreviate or Combine Names

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| MIRACLE HILL NURSING AND REHABILITATION CENTER, INC. | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS Line One | | | |
| 1329 ABRAHAM STREET | This space not available. | | |
| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
| | TALLAHASSEE | FL | 32304 | US |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (2a OR 2b) - Do Not Abbreviate or Combine Names

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| | | | |
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS Line One | | | |
| | This space not available. | | |
| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - INSERT ONLY ONE SECURED PARTY NAME (3a OR 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 1329 ABRAHAM STREET HOLDINGS LLC | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS Line One | | | |
| 8301 ROOSEVELT BLVD. | This space not available. | | |
| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
| | PHILADELPHIA | PA | 19152 | US |

**4. This FINANCING STATEMENT covers the following collateral:**

DEBTOR HEREBY GRANTS TO SECURED PARTY A CONTINUING SECURITY INTEREST IN, AND LIEN ON, ALL RIGHT TITLE AND INTEREST IN ANY AND ALL OF ITS ASSETS, WHETHER NOW OWNED OR HEREAFTER ACQUIRED OR ARISING, TOGETHER WITH ALL PROCEEDS THEREOF, AND ALL ADDITIONS AND ACCESSIONS THERETO.

| 5. ALTERNATE DESIGNATION (if applicable) | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR |
|---|---|---|---|
| | ☐ AG LIEN | ☐ NON-UCC FILING | ☐ SELLER/BUYER |

**6. Florida DOCUMENTARY STAMP TAX** - YOU ARE REQUIRED TO CHECK **EXACTLY ONE** BOX

☐ All documentary stamps due and payable or to become due and payable pursuant to s. 201.22 F.S., have been paid.

☑ Florida Documentary Stamp Tax is not required.

**7. OPTIONAL FILER REFERENCE DATA**    FLORIDA SECRETARY OF STATE

STANDARD FORM - FORM UCC-1 (REV.05/2013)    Filing Office Copy    Approved by the Secretary of State, State of Florida